———o———

ELI G. PARIS, Respondent, *vs.* GEO. HALEY, Appellant.

1. *Equity—Specific performance of parol contract for conveyances of land—Proof as to indentity of tract, what sufficient—Rescission of contract—Relief, what granted—Settlement of accounts by referee, etc.*—In suit in equity by the vendor for specific performance of an alleged parol contract for the conveyance of land, plaintiff set out an agreement under which he was to put defendant in possession thereof, and upon full payment of the purchase money to execute a conveyance. Petitioner then charged possession taken and retained by defendant and non-payment of part of the purchase price, and offered to convey on full payment and prayed for a decree compelling payment of the deficit, and in default thereof for sale of the land or rescission of the contract. Defendant answered that the contract included a transfer of a ten-acre tract in addition to that declared upon, and claimed that the part payment satisfied the indebtedness for the latter. As to whether the contract embraced the ten-acre lot, the testimony of plaintiff and that of defendant were directly contradictory, but it tended to show occupation by defendant of that lot. A witness for plaintiff, shown to be on bad terms with defendant, stated that defendant told him that he could have got the additional lot from plaintiff if he had only thought of it. Another witness testified that he understood from a conversation between the parties that plaintiff had sold out to defendant. But it nowhere appeared that the land in controversy was plaintiff's entire estate in the vicinity. No title.

bond was given for conveyance of the property, and no memorandum was made to show what land was sold.

*Held*, that such proof, contradicted by defendant's testimony, would not warrant a decree of specific performance, that the contract should have been rescinded and the defendant reimbursed for his partial payment, and plaintiff put in possession of the land, and reimbursed for loss of rents and profits, and that, to adjust unsettled accounts, a reference should be taken.

2. *Specific performance may be granted to vendor—Measure of proof requisite—Parties should be placed in statu quo, when.*—It is well settled that a vendor, in like manner as a vendee, may sue for specific performance of a contract to convey land. But if its terms are uncertain, ambiguous or not made out by satisfactory proof, the decree will not be granted. And in that case a court of equity will, as far as possible, replace parties *in statu quo.*

3. *Specific performance—Discretion of Chancellor in, how exercised.*—A decree of specific performance is a matter of discretion to be determined, not arbitrarily, but in accordance with the facts established, and in conformity with such principles as are applicable to the facts.

4. *Equity—When party is in court, decree may adjust matter cognizable at law.*—A court of equity will not turn a party out of court to pursue his remedy at law where complete justice can be done by the court of equity; and this, although in its progress, the court may decree on a matter cognizable at law.

*Appeal from Lawrence County Circuit Court.*

*J. C. Cravens,* for Appellant.

*Ewing & Smith,* for Respondent.

Napton, Judge, delivered the opinion of the court.

This action was by a vendor against a vendee, to compel specific performance by the vendee of a parol agreement concerning land.

The plaintiff avers that he has the fee simple title to certain lots which he specifically describes, consisting of six lots in the town of Mount Vernon and one lot adjoining the town particularly described by metes and bounds; that on the 19th day of November, 1864, he verbally sold these lots and land to defendant for the sum of $3,000, for which sum the defendant gave his three notes, all dated on the day of the sale—one payable on the 25th of December following, another payable in twelve months from date, and the third payable in twenty-four months from date. The agreement was, as the petition alleges, that plaintiff was to put defendant in

possession of these several pieces of land, some of them in the town having buildings on them, and upon full payment of the notes for the purchase money, was to execute a deed conveying the title. It is alleged that possession was then given which has ever since been retained, and that defendant made two payments on the notes, and that excepting these two payments defendant has failed and refused to pay the purchase money. The plaintiff states his readiness to convey, upon full payment, the lots and land specified. A decree is therefore asked to compel defendant specifically to perform his contract, and to pay the remainder due with interest, and in default thereof that the land and lots be sold to satisfy the debt, or that said contract be rescinded and for naught held, and that your petitioner be placed in the possession of said land and lots and the appurtenances thereof, and for such other relief, &c.

The answer of the defendant admits the execution of the notes for $3,000, and concedes that the property described in the petition was partly the consideration therefor, but avers that the agreement was for the purchase of these lots and a ten-acre lot of wood land adjoining, which is in the answer described by metes and bounds. The answer asserts that the defendant was put in possession of all these lots, including the ten-acre lot, and that he has continued in possession ever since and still is in possession. The answer avers that the purchase money for all these lots was $3,000, for which the notes referred to were given.

The answer then proceeds to enumerate various payments claimed on the notes, and a bill of items for work, and labor, and board, and money loaned and paid, which, in the aggregate, it is claimed, greatly overpaid the purchase money, and a judgment is asked for this overplus, and a decree divesting the plaintiff's title to the lots claimed to have been sold by plaintiff to defendant, as stated in the answer.

A replication was duly filed, putting in issue these defences.

The following, among other issues, was submitted to a jury: "whether part of the consideration, for which the notes

sued on were given, was ten acres of land off from the west half of the northeast quarter of section 31, township 28, range 26," which was the lot asserted in defendant's answer to have been sold along with the others.

Other issues were submitted to the jury in regard to payments alleged on one side and denied on the other, and in regard to the state of accounts between the parties. As our determination is entirely independent of these questions, it is unnecessary to state them particularly, or the evidence which was given in respect to these issues in support of one side or the other.

The verdict of the jury on the issues is not stated in the record, but we may infer from the decree that it was for the plaintiff.

The decree recites that, a motion to set aside the verdict of the jury having been disregarded, it is ordered and decreed by the court, upon the finding of the jury and the evidence, that the ten acres of land mentioned in defendant's answer, (describing it), was not embraced in the contract made between plaintiff and defendant. The decree then proceeds to state the credits on the notes, which the court allows, and that the consideration of the notes was the property as stated by the plaintiff and not as stated by defendant; that defendant was placed in possession ; that there remained due on the notes $2,203.17. It was therefore ordered, adjudged and decreed that the plaintiff recover of defendant the said sum ; and further, that upon the payment of the sum found due by defendant, the plaintiff execute a deed, &c., for the land so sold, and in default of such conveyance that the plaintiff be divested of all title to the same, and the same be vested in defendant. It was further decreed, that upon the defendant's failure to pay said sum and costs within sixty days from the date of the decree, the said lands, or a sufficient amount thereof to satisfy this judgment, be sold ; that the proceeds of the sale be applied as follows: first, that the plaintiff's costs be paid, and second, this judgment, and third defendant's costs, and the residue, if any, to defendant; and if the property

is insufficient to pay this, then to be levied of any other goods and chattels, lands and tenements of defendant.

The bill of exceptions contains a great deal of testimony relative to the state of accounts between the parties, which need not be recited. The only direct testimony in regard to the land sold was given by the plaintiff, and the defendant stated in his examination, as he stated in his answer, that the sale included the ten-acre wood lot adjoining the grass lot, both of which were outside of the town of Mount Vernon, but immediately adjoining it, and that he took possession of the wood lot as well as the other lots. Two witnesses stated that the defendant employed them, after the date of this purchase, to cut wood in the ten-acre lot, and they and others cut wood and poles during the winter and hauled them for Haley, the defendant. Another witness for defendant (Hendricks) stated that he was called on to draw up the notes for the purchase money of some real estate. Something was said about the plaintiff giving a title bond, and all this witness knew about the real estate was, that he understood from both parties "that defendant was buying the plaintiff out."

The plaintiff, on his examination, stated positively that the ten acres was not included in the purchase; "that Hendricks drew up the notes, and that was the wind-up of the matter so far as that 'deal' was concerned."

A witness for the plaintiff who admitted himself to be on bad terms with the defendant, stated that Haley told him whilst working on his barn that "the ten-acre tract east of the blue grass lot he could have got from Eli Paris if he had only thought of it."

This is all the evidence in the record on the subject.

It appears to be well established that a vendor may maintain a suit for a specific performance in all cases where the vendee can sue for a specific performance—that the remedy is mutual, upon the doctrine of courts of equity, that the vendor is a trustee for the purchaser as to the land, and the vendee a trustee for the vendor as to the purchase money. Suits of this kind by a vendor are, however, not frequent,

especially where notes for the purchase money have been given, and where the remedy at law would seem to be complete, except so far as the plaintiff desires to enforce a vendor's lien against the estate sold.

It is said by Mr. Fry, in his treatise on this subject, in explanation of suits by a vendor for a specific performance where his remedy at law is complete, that " it will be apparent that damages will not place the vendor in the same situation as if the contract had been performed, for then, (that is, if the contract had been performed) he would have got rid of the land and all the liabilities attaching to it, and would have the net purchase money in his pocket; whereas, after an action at law he still has the land and in addition damages, representing, in the opinion of a jury, the difference between the stipulated price and the price which it would probably fetch if resold, together with incidental expenses and any special damage which he may have suffered." (Sec. 23.)

It is obvious that this passage of the compiler has no reference to such a case as the present, where the vendor has the notes of the purchaser in his pocket, but to cases where the suit at law must be for damages for not complying with the contract of sale.

But it is immaterial by what name the present action may be termed, whether for specific performance of the contract of sale or for an enforcement of the vendor's lien; it is in either event cognizable by a court of equity, according to the authorities cited in the text books, (see Story, Hilliard, Fry, *passim*), and the principles and rules by which a court of equity would be governed are essentially the same in either view of the purpose of the action.

The prominent difficulty in this case is to ascertain what land was sold by plaintiff and what bought by defendant. It is agreed in all the cases on this subject that there must be no uncertainty about the contract—that it must clearly appear what is the contract sought to be enforced. The certainty need only be a reasonable one, satisfactory to the court, in regard to the subject matter of the contract and the cir-

cumstances under which it was entered into. If, however, the terms are uncertain, ambiguous, or not made out by satisfactory proof, a specific performance will not be decreed; for, as observed by Judge Story, one of the most important objects of the statute of frauds was to prevent the introduction of loose and indeterminate proof of what ought to be solemn contracts. (2 Story Eq., § 764.) In Phillips vs. Thompson, (1 Johns. Ch. R., 149) Chancellor Kent observes that " it is well settled that if a party pleads part performance to take a parol agreement out of the statute, he must show acts unequivocally referring to and resulting from that agreement, such as the party would not have done unless on account of that very agreement, and with a direct view to its performance; and the agreement set up must appear to be the same with the one partly performed. There must be no equivocation or uncertainty in the case. The ground of the interference of the court is not simply that there is proof of the existence of a parol agreement, but that there is fraud in resisting the completion of an agreement partly performed." And the Chancellor in that case refused to execute the agreement specified in the bill, observing that " the plaintiff has failed in satisfactory proof of his agreement; he fails also in showing such acts of performance as are necessarily to be imputed to that agreement." And the Chancellor concludes by observing: " This case, like many others, shows the utility of the statute of frauds, and the danger of relaxing the sanction of its provisions. I agree with those wise and learned judges who have declared that the courts ought to make a stand against any further encroachment upon the statute, and not to go one step beyond the rules and precedents already established."

It will be observed from the statement of the petition and answer in the case now under consideration and the testimony of the plaintiff and defendant, that there is a material discrepancy between the subject matter of the alleged contract of sale set up by the plaintiff and that set up by the defendant, and that each party, on examination as witnesses, testifies to

the truth of the allegations respectively made by each. It necessarily follows that the one or the other has committed deliberate perjury, or, to take a more charitable view, that there was at the beginning a total misunderstanding between them as to the property designed to be sold and bought; and if the last supposition is adopted, there was of course, no contract between them; and if the first conclusion be followed, the court is then left to guess as to which of the parties is more worthy of credit. No testimony whatever is offered on this point, nor any evidence given of the value of the various pieces of property or of the aggregate, by which the probability of the truth of the one or the other could be conjectured. And when we look into the evidence of such other witnesses as testified on this point, it is apparent that very little additional light is thrown upon the subject. For the plaintiff a witness testified that he heard the defendant say that he might easily have acquired the ten-acre lot from plaintiff if he had thought of it; but the witness conceded that he was not on good terms with the defendant, and it is so easy to torture a casual observation or misunderstand it or misreport it, that it would hardly be a safe guide for a court of equity. (Ring vs. Richardson, 53 Mo., 394, and authorities there cited.) On the other hand, the witness who was requested to draw up the notes, and who understood that they related to a sale of land, merely because he heard mention made of a title bond, understood from the conversation between the parties that the plaintiff had sold out to the defendant. Had it been proved that the plaintiff owned no other lots or small tracts in and adjacent to Mount Vernon than those enumerated in the answer which included the ten-acre tract in controversy, this understanding of the witness would go far to sustain the defendant's statement of the sale, and so the testimony of the two witnesses that defendant took possession of the ten-acre lot as well as of the others, has a tendency in the same direction.

After all it is obvious that the uncertainty of the contract remains, unless upon a question of this nature the court is

willing to throw the responsibility upon a jury and adopt their verdict. The question relates to the statute of frauds and to the rules that courts of equity have adopted to determine what circumstances take a case out of the statute. A decree for a specific performance is a matter of discretion, to be determined, not arbitrarily, but in accordance with the facts established, and in conformity to such principles as are applicable to the facts. One of these well established principles is, that the subject of the contract should be clearly ascertained to the satisfaction of the court which is called on to decree a performance of the contract. In this case the property to be conveyed, as stated on one side, is not the same property which the other side insists was to be conveyed. We have the statements of each party, under oath, and they are totally inconsistent. No information is furnished that would enable a court to conclude that either party was not entitled to credit.

Moreover, it is alleged by the defendant, that it was agreed that a title bond should be executed, but it appears that none such was made, and no memorandum in writing was made to show what land was sold. Notes were executed by defendant, the vendee, but nothing further was done. Why was this omitted ?

The vendor here is applying for an execution of the contract. Why did he leave it in this uncertain state ? No title bond was given, nor any memorandum of the property conveyed. The possession taken by the purchaser was of the land he understood to be embraced by the contract of sale. Suppose the purchaser was the plaintiff and asking a specific performance, and it was claimed that the ten acres were included in the sale, his possession of the ten acres would be the basis of his claim to take the case out of the statute of frauds. Would the court enforce a specific performance, at the instance of the purchaser, when the vendor denied the contract as stated, and there was no proof but the oath of the vendee ? There would be, in that case, the additional circumstance that the vendee took possession of all the lots

supposed or claimed to be bought, and surely he would have a better claim to the interposition of the court than the plaintiff in this case has; certainly one as strong. The court cannot enforce two contracts, utterly inconsistent with each other, nor can the court make a contract for the parties.

As the bill prays, in the alternative, that if the contract cannot be enforced, it may be rescinded and the parties placed in *statu quo*, so far as practicable, we think a decree in conformity to that prayer of the bill would be the most equitable way of settling the controversy. Previous to any final decree it would be proper to refer the unsettled accounts between the parties to a referee, and ascertain what amount had been paid by the defendant on his notes, and the amount of rents and profits due plaintiff, and the value of improvements, if any, made by defendant. The contract of sale then, whatever it may have been, should be declared null, the plaintiff be ordered to deliver up the notes and pay the defendant whatever may have been received on them, and the defendant decreed to deliver possession of the premises, accounting for the rents and profits, from the time he took possession. It seems to be well established, that a court of equity will not turn a party out of court, to pursue his remedy at law, where complete justice can be done by the court of equity, and this, although in its progress, the court may decree on a matter cognizable at law. (Cuthcart vs. Robinson, 5 Peters, 263.) In this case the plaintiff has the legal title and the defendant's notes, and it would seem that so far as he was concerned, his remedy at law was ample, but the court having jurisdiction of the case, as stated in the bill and asking in the alternative for recision, the court should proceed to settle the controversy, and we think it may be most equitably settled in the mode above suggested.

Judgment reversed and the case remanded. Judge Sherwood not sitting.