JOHNSON, Appellant, v. DETRICK et al.

Division One, November 14, 1899.

1. **Partition: NUMEROUS LANDS.** In a partition suit if a majority of the parties do not reside in any of the counties where the lands lie, the suit must be brought in the county in which the greatest number of acres lies.

2. ———: ———: ———: WORDS OF STATUTE. The words of the statute that, where a majority of the parties do not reside in any of the counties where the lands lie, the suit shall be brought in "that county in which an equal or greater part of such premises may be," means an equal or greater area, and not a greater part of the land in value.

3. **Jurisdiction:** PLEAS COUPLED WITH PLEA TO MERITS: WAIVER. A plea to the jurisdiction even when coupled with a plea to the merits, is permissible under the Missouri Code, and the latter plea does not, as at common law, waive the former.

4. ————: DEFECT APPEARING ON FACE: WAIVER BY ANSWER: FORUM. Where it appears from the face of the petition that a partition suit has not been brought in the proper county, the defendant is not compelled to demur, but may plead to the jurisdiction in his answer, and it will not be held that this plea is waived because he failed to demur. And this is the holding, although the suit is brought in a court which has an inherent jurisdiction over the subject-matter and the only question in the plea is the one of forum.

5. **Partition:** MANDATORY STATUTE. The statute directing in what counties partition suits are to be brought, is mandatory, and not simply directory.

*Appeal from Clay Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

E. F. WARE for appellant.

(1) The defect of jurisdiction as to the respective areas of land appeared in the petition. There was no demurrer. The court decided the question upon the area. The court erred, because the question as to area had been waived. (2) The law is directory.

SANDUSKY & SANDUSKY for appellant.

(1) Section 7132, R. S. 1889, provides for the partition of "lands, tenements or hereditaments," and section 7133 provides that where the "lands, tenements or hereditaments" lie in different counties, the suit shall be brought in the county in which "an equal or greater part of such premises may be." An "equal or greater part" as here used means an equal or greater part in value. Henry v. Thomas, 119 Mass. 583. Compare sections 7132, 7133, 7156, 7163 and 7168. (2) By the failure to demur, the respondents waived all question

as to jurisdiction, and the question of jurisdiction could be waived under the facts in this case.     Chouteau v. Allen, 70 Mo. 290; Stearns v. Railway, 94 Mo. 317.; Real Estate Co. v. Lindell, 133 Mo. 386.   (3)   The circuit court of Clay county at all events had jurisdiction to partition land lying in Clay county, and the court therefore erred in dismissing the cause.

D. C. ALLEN for respondents.

(1)   The word, "part," in the final line of section 7133, in the connection, "an equal or greater part of said premises," means area and not value.   (2)   The word, "part," in its definitions is used interchangeably with the word, "portion." So it is in the Missouri statutes of partition.   See sections 7143, 7147, 7148 and 7155.   (3)   The words, "part and portion," are used in the Missouri statute in regard to the partition of real estate with precisely the same meaning. The words, "share, tract, and parcel," are, also, used and in a sense perfectly synonymous with "part or portion."   In addition to the use of the word, "part," in section 7133, "part and portion" are used in the following places in that statute, viz.: Sections 7143, 7147, 7148, 7149, 7154, 7155, 7163, 7165, 7166 and 7183.   An examination of the words in the contexts indicated can only lead to the conclusion that "part" can not mean "value." A more particular examination is made into the following instances of use, viz.:   (a) In section 7146, "parcel or share" is used in the same sense as "part or portion." "Parcel" certainly does not mean "value."   How can "any number of shares be set off together in one parcel" if "parcel or share" mean "value?" (b) In section 7153, how could a "share" if it means "value," be "divided and set off by proper metes and bounds?" (c) In section 7157,"share"is used in the same sense as "part or portion."   If "part" means "value," how could the commissioners describe the lands divided, and the shares allotted to each party, with the quantity of each share, the boundaries, courses and distances? (d) In section 7164, how, if

"part" means "value," could the commissioners "set off a part only of the shares?" These instances will serve for all. (4) Under section 7166, the sheriff sells lands not values. Where a tract or parcel of land is cut or divided by county lines, he sells the whole "in that county wherein the greater part of such land is situated." Besides, the text says situated, and values are not situated. Will any one seriously contend that the word, "part," there, means "value?" Incontestably, it there refers to "area." (5) In this case the subject-matter— the *res*—is land, not simply person. Hence, if the condition does not exist which gives jurisdiction, the circuit court can not acquire it. If the word, "part," means area, as contended by these respondents, then the circuit court of Clay county could not acquire jurisdiction over any of the lands, and all of its proceedings in this case were absolutely null and void, *ab initio*. Yount v. Yount, 15 Mo. 383; Carr v. Lewis Coal Co., 96 Mo. 149; Brown v. Woody, 64 Mo. 547; Howard v. Thornton, 50 Mo. 501; Adams v. Cowles, 95 Mo. 501; Myers v. McRae, 114 Mo. 377; Hawes on Jurisd., sec. 9. And where the circuit court has not jurisdiction by law, it can not be acquired by waiver or consent of the parties. Hawes on Jurisd., sec. 9; Stone v. Corbett, 20 Mo. 350; Dodson v. Scroggs, 47 Mo. 285; Bray v. Marshall, 66 Mo. 122; Snitjer v. Downing, 80 Mo. 586. And the question of jurisdiction can be raised, at any time, in the circuit or Supreme Court. Henderson v. Henderson, 55 Mo. 534; Graves v. McHugh, 58 Mo. 499; Stanley v. Railroad, 62 Mo. 508; Bray v. Marshall, 66 Mo. 122. (6) Appellant claims, that these respondents should have demurred to the petition and in that way presented the question of jurisdiction, and not by way of answer. If her position be true, then she should have demurred to the answers, or moved to strike them out, or objected to the introduction of evidence by respondents under them. She did neither, but filed her reply thereto. Hence, even if there were error in that regard, the court will not

now consider it.   It has not been brought to this court.   Brady
v. Connelly, 52 Mo. 19; Bollinger v. Carrier, 79 Mo. 318;
Griffin v. Regan, 79 Mo. 73; State ex rel. v. Burckhartt, 83
Mo. 430.    Besides, appellant is estopped to change the theory
on which she acted in the court below.    Meader v. Malcolm,
78 Mo. 550; Thompson v. Woolridge, 102 Mo. 505; Heath
v. Goslin, 80 Mo. 310; Loomis v. Railroad, 17 Mo. App. 340.

MARSHALL, J.—J. P. Johnson, a resident of the State
of Kansas, died testate and solvent in 1898, and his will was
probated at his domicile in Doniphan county, Kansas.    He
was seized of 40 acres of land in Lawrence county, Missouri,
80 acres in Monroe county, 320 acres in Texas county, 400
acres in Miller county, 473 acres in Clay county, 11,026
acres in Shannon county, and 19,444 acres in Laclede
county.    All of his heirs are non-residents of Missouri, except
Mary C. Todd and Martha J. Sprague, who reside in St. Louis,
and no part of the land lies there.    The will devised one-half
of the property to the widow, the plaintiff, and the other half
to the children and descendants of his five brothers.    The
widow instituted this action for a partition, against the other
heirs, in the circuit court of Clay county.    The petition, after
other material allegations, set out specifically the location of
each tract of land, and then averred that "a majority of the
parties entitled to said lands do not reside in any county in the
State of Missouri, and that the greater part *in value* of said
lands are situate in Clay county, Missouri."    Of the defend-
ants, Charles W. Johnson, Charles R. Stone, Franklin H.
Stone, Samuel W. Stone, Harriett A. Jones, and John W.
Stone by their answers denied the allegation of the petition
that the greater part in value of the premises is situated in
Clay county Missouri, and averred affirmatively that the cir-
cuit court of Clay county had no jurisdiction of the cause
because none of the parties reside in either of the counties
where the land is situate, but that all of the parties are non-

residents of Missouri, except Mary C. Todd and Martha J. Sprague, who reside in St. Louis, "and that the greater part of said premises, both in area and value, is situate in the county of Laclede, in the State of Missouri." Twenty-four other defendants answered, raising issues not material to the question here involved. The other defendants made default. Plaintiff filed a general reply to the answers. The case was tried by the court, a jury being waived, and the court found that the land in Clay county was equal in value with the land in Laclede county but that the land situate in Laclede county was greater in area than the part of the lands situate in either of the counties of Clay, Miller, Lawrence, Texas, Monroe or Shannon, and hence that it had no jurisdiction of the cause, but that the jurisdiction to hear and determine the cause is in the circuit court of Laclede county, and therefore dismissed the suit. Plaintiff's motion for new trial was based entirely upon the alleged error of the court in holding that it had no jurisdiction, and upon the ground that the value and not the area of the land was the true test of jurisdiction, and as the court had found the Clay county lands to be of equal value with the Laclede county lands, the circuit court of Clay county had jurisdiction. This motion being overruled, the plaintiff appealed.

Three propositions are asserted by plaintiff:

1st.   That the value and not the area of the lands to be partitioned determines the jurisdiction.

2d.   That defendants have waived all objection to the jurisdiction.

3d.   That the statute (section 7133, R. S. 1889) is directory, and not mandatory.

We will consider these propositions in the order stated.

## I.

The principal question involved is the first contention of the plaintiff that under section 7133, R. S. 1889, the suit

must be brought in the circuit court of the county where an equal or greater part *in value* of the premises to be partitioned may be.   The defendants contend that area and not value must control the forum.   This is a case of first impression in this State, and the statute itself must solve the question. That statute (sec. 7133, R. S. 1889) provides as follows:   "Such petition shall be filed in the circuit court of the county in which such lands, tenements or hereditaments lie; but if the same shall lie in two or more counties, whether in detached parcels or otherwise, said petition shall be filed in the circuit court of the county in which any portion of such premises are situate, and a majority of the parties entitled thereto reside; and in case a majority of said parties do not reside in any such county, or all of them are non-residents of the State, the proceedings for partition shall be had in the circuit court of that county in which an equal or greater part of such premises may be."

Analyzed, the statute provides:   1st, If all the land lies in the same county, the suit must be brought in that county; 2d, If the land lies in two or more counties, the suit may be brought in the county in which any portion of the premises is situate and where a majority of the parties entitled thereto reside; 3d, In case a majority of such parties do not reside in any county in which any part of the premises is situate (which is the case here) or all of them are non-residents of the State, the suit must be brought in the county in which an equal or greater part of such premises shall lie. Manifestly this case falls under the first provision of the third class, for a majority of the parties do not reside in any of the counties where the land is situated, and hence the suit must be brought in the county in which an equal or greater part of such premises lies.   Plaintiff's construction requires the interpolation of the words *"in value"* after the word "part" in the last line of the section, and her able counsel has by illustrations and puzzles pointed out possible confusions which may

result from interpreting the statute to mean area and not value, but a critical analysis will show that the same results might follow whichever meaning is put on the statute. For instance, counsel argues that if the deceased owned 206 feet square in the heart of St. Louis, worth a million dollars, and one acre in McDonald county, worth only one dollar, the circuit court of McDonald county, by reason of the land in that county having a greater area, would have jurisdiction. But suppose we reverse the picture and take a case where the deceased owned at the time of his death parts of land of the area and value supposed, and that the next day valuable mineral deposits are discovered on the McDonald county land, which make it worth more than the St. Louis part, would the jurisdiction shift from St. Louis to McDonald county because the value had changed? Or suppose the McDonald county one acre at the time of the death or of the institution of the suit had such mineral deposits on it that were worth many times the value of the St. Louis part of the premises, and the next day the vein of mineral ran out, so that it became only valuable as farming land, and of much less value than the St. Louis land, would the jurisdiction shift from McDonald county to St. Louis? Again, counsel imagines a case where the decedent owned land in twenty-five counties and the partition suit was brought in the county where the greatest area of land lay, and after judgment and a sale of the land, it is discovered that the decedent did not own any land in the county where the suit was brought, and he says the purchaser's title would fail for the partition judgment was *coram non judice*. But would not the same be the result if the suit had been brought in the county where the greatest part of the land in value was situate? The fact that in bringing the suit the jurisdiction was determined by area or by value could not determine the title to the land, and in either event the purchaser at the partition sale would get only the title which the parties to the suit had, just as a purchaser always does at any judicial sale.

The third supposed case is a partition suit in a county where the greater area lies, and a subsequent discovery that decedent owned land in some other county which is of greater area than that in the county where the suit is brought, and counsel asks would the jurisdiction in the circuit court of the county where the suit was brought be lost? The answer would be the same if the suit had been brought where the greater part in value of the premises lay. Neither value nor area could prevent the discovery or existence of other land in another jurisdiction of greater value or area than the land in the county where the suit was brought.

All of which shows that we are no nearer a solution of the problem than we were when we started. It is insisted, however, that the law has regard for the convenience of the parties litigant, and that nearly all the parties to this suit reside in Doniphan county, Kansas, which is very near to Clay county, Missouri, and that Laclede county is two hundred and fifty miles from where most of the parties reside, and hence Clay county is more convenient than Laclede county. But let us suppose that the conditions were that the Clay county land contained 19,444 acres and the Laclede county only 473 acres, and that the Laclede county land was greater in value, which would control the jurisdiction, the value, the area or the convenience of the parties litigant?

Certainty in the law is its most desirable element. Law is a rule of conduct. Ignorance of it excuses no man. It ought therefore to be plain enough to be understood by all whose conduct it governs and who are held to a knowledge of it. If section 7133, *supra*, was construed to mean that the suit must be begun in the county where an equal or greater part, *in value*, of the premises may be, no lawyer or layman would be safe in laying the venue, for the value of any article, real or personal, is a mere matter of opinion and necessarily changes or fluctuates by reason of conditions which may or may not be controlled. Such a construction therefore would

not conduce to certainty in the law. On the other hand the area of land is a fact which is easily ascertained, and does not ordinarily change without some natural cause, and even after such a change the part left is easily determined. No argument *ab inconvenienti* should prevail, for such considerations present in this case as to Clay county may be reversed to-morrow in the next case where the greater area lies closer to the domicile of the parties litigant than does the equal or greater part in value of the premises. ˙

Aside from such considerations, and from the fact that to construe the statute to mean value and not area it is necessary to interpolate the words "in value" to the letter of the text, an examination of the history and development of the law shows that area has always been meant by the lawmakers. Thus, under the Territorial Laws (vol. 1, p. 204, sec. 2) land lying in different districts could be united in the same suit for partition, where a district line ran through them. The statutes of 1845 (sec.1, ch. 128, p. 765) required the suit to be begun in the county in which the lands lay,"or where any tract of land is divided by a county line, then the court of either of the counties in which the lands may lie." Under this statute the case of Yount v. Yount, 15 Mo. 384, came to this court. The suit was begun in Cole county, and it was alleged that the decedent owned lands in Cole, Boone and Callaway counties, and it was held that the circuit court had no jurisdiction except as to the Cole county land, because the circuit court of one county could not decree a partition of land lying in another county except in the single case of land divided by a county line. Hence separate partition suits were necessary in every county where the decedent owned land except where a tract of land was divided by a county line. This case was decided at the January term, 1852. At the next session of the Legislature the Act of February 23rd, 1853, was passed for the apparent purpose of remedying the difficulties presented by a multiplicity of suits made necessary by the defect

in the law as pointed out in the case above referred to, and it was provided that where the lands lie in two or more counties the suit might be filed in the county where the major part of the parties entitled to the premises reside, but if a majority of the parties did not reside in either of such counties or all of the parties are non-residents of the State, "then the petition shall be filed in the circuit court of the county in which the greater part of said premises may lie." (Acts 1852-3 p. 113.) This provision was carried into the revision of 1855 (R. S. 1855, sec. 2, ch. 119, p. 1110) with the change that the words "an equal or" were inserted before the words "greater part of such premises" in the last line, and the final word "lie" was changed to the word "be." And in this changed form it has passed through the revisions of 1865 (p. 611, sec. 2), of 1879 (vol. 1, p. 572, sec. 3340) into the revision of 1889, where it now appears as section 7133.

The conclusion is irresistible, therefore, that the equal or greater part of the premises referred to in section 7133, R. S. 1889, means the area and not the value, and the circuit court was right in so holding in this case.

## II.

The second proposition relied on by plaintiff is that the defendants have waived all question as to jurisdiction.

The gist of the argument is that as to matters over which the court whose jurisdiction is challenged has no inherent jurisdiction, consent can not confer jurisdiction and hence the question of jurisdiction can not be waived, but that as to all other matters, courts of general jurisdiction, which proceed according to the course of the common law, have an inherent jurisdiction over the *res*, and it is therefore a question of forum in any given case, and hence the parties may expressly or by their conduct waive objection to the forum. The first class is illustrated by showing that a justice of the peace has no

jurisdiction to try an ejectment suit or a probate court to try an admiralty case, or a state circuit court to try a federal crime, or a United States district court to try a divorce case, and the second class is illustrated by referring to a partition suit or a suit on a note or for personal injuries over which a circuit court has general jurisdiction over the subject-matter involved in suits of such character, but the suit is brought in a circuit court of a county in which none of the property lies and none of the parties have their domicile, and the parties fail to plead or except to the forum, the question of jurisdiction commonly speaking, or forum properly speaking, is waived. Or stated otherwise, inherent want of jurisdiction can not be waived, but objection to the venue may. [Hope v. Blair, 105 Mo: 85.]

The general principles underlying this contention may be conceded and are fully established in our State in the case of Chouteau v. Allen, 70 Mo. 290; Stearns v. Railroad, 94 Mo. 317, and Real Estate Co. v. Lindell, 133 Mo. 1. c. 395. But these principles and cases are not applicable to or decisive of the case at bar, for in those cases the court had jurisdiction of the *res,* and no question was raised by plea or exception to the forum, and therefore the judgments in those cases were not subject to attack in a collateral proceeding nor upon appeal or writ of error, but in the case at bar, while the inherent jurisdiction of the circuit court to try suits for a partition is conceded, these defendants, by plea, expressly raised the question of forum, issue was joined thereon, the case was tried solely on that issue and the circuit court sustained the defendant's plea. The defendants have not therefore waived the question by a failure to plead it, and as they were successful in the trial court, they had nothing to except to. This is a direct and not a collateral attack, and the question is presented in this court by appeal from the express ruling of the trial court on the plea to the forum. Hence the case falls

within the reasoning of the cases referred to, and the question is fairly raised.

But plaintiff insists that all these matters appeared on the face of the petition, and that under section 2043, R. S. 1889, the duty of the defendants was to demur to the petition; that under section 2047, R. S. 1889, an objection to the jurisdiction can only be taken by *answer* where the want of jurisdiction does not appear on the face of the petition, and therefore these defendants waived the objection by failing to demur. It will be observed that while section 2043 permits a demurrer to a petition where the want of jurisdiction appears upon the face of the petition it does not require it to be exclusively raised in that manner. A plea to the jurisdiction, even when coupled with a plea to the merits, is permissible under our code, and the latter plea does not, as at common law, waive the former. [Cohn v. Lehman, 93 Mo. l. c. 581-2.] The construction put by plaintiff upon sections 2043 and 2047 of our code is narrower and more stringent than the courts of this State have ever construed those provisions.

## III.

Plaintiffs' last contention is that section 7133, R. S. 1889, is *directory* and not mandatory, and hence a partition suit may be instituted in any county in the State where any part of the land lies if the decedent owned land in two or more counties.

The same construction would nullify the whole of article III of chapter 33, regulating the place of beginning suits, and a plaintiff might annoy and vex a defendant by bringing a suit in a distant county from the domicile of either, where it would be expensive and inconvenient to go or to take witnesses.

As at common law a defendant was entitled to a trial by a jury of his peers drawn from the vicinage, so under our code 'differences are required to be settled at home, among the peo-

ple who are acquainted with some or all of the parties.   So section 2011 provides as a general proposition that, "suits for the possession of real estate, or whereby the title thereto may be affected shall be brought in the county within which such real estate, or some part thereof, is situate."   As hereinbefore pointed out from the days of the territorial laws until 1853, separate suits in partition had to be brought in every county in which a decedent left lands, except in the single instance where a tract of land was divided by a district or county line, in which event it could be brought in either county. The act of 1853 was intended to remedy this inconvenience arising from a multiplicity of suits where the rights of the parties were the same, and so provided that if the lands lay in two or more counties the suit should be filed in the county where a majority of the parties in interest resided, but in case a majority of the parties in interest did not reside in any of the counties where land was owned by the decedent or all of the parties were nonresidents, then the suit must be brought in the county where the greater part (the provision as to the "equal" part appeared for the first time in the revision of 1855, as before shown) of the premises may be—for the purpose of having the whole land partitioned in one suit, and in the forum where the majority of the land was located, and such has been the statute ever since.   In other words the policy of the law is to have but one suit, which shall be brought in the county where the majority of the parties interested reside, if such majority reside in any county in which any part of the land is situated, or if not, then in the county where the equal or greater part of the premises may be, thus fixing the forum primarily as of the majority of the parties, and secondarily of the equal or greater part of the land.   It may be that this is purely an arbitrary provision, but when it is remembered that it is an exception to the provisions of section 2011, and is in favor of the parties litigant, and is as reasonable and certain as any other provision that could be suggested, and that for nearly half a

century it has stood upon our statutes unchallenged and hence presumptively adequate to meet all exigencies that have heretofore arisen, it would not be reasonable to hold now that it was purely directory, and that any litigant may select a forum of his choice.   This provision of the statute is as mandatory as any other relating to forum, and to hold otherwise would be to make the venue in real as well as personal actions purely transitory, which would be ill advised if not illegal.

Upon the whole case the judgment of the circuit court was right and is affirmed.

All concur.