Catherine Rice, Appellant, v. Mrs. Harry W. Griffith, Representative, Executrix and Administratrix of the Estate of Harry W. Griffith, Deceased, Mrs. Mary Griffith, Mrs. Floy Stean, Mrs. Seth White, Griffith Suburban Development Company, a Corporation, and Kansas City Title and Trust Company, a Corporation.—161 S. W. (2d) 220.

Division Two, March 13, 1942.

Modified on Denial of Rehearing, May 5, 1942.

374

*Raymond E. Martin* and *W. Raleigh Gough* for appellant.

*Adams, Adams & Adams* for respondents.

BOHLING, C.—After handing down an opinion affirming the judgment and decree nisi (144 S. W. (2d) 837), the Kansas City Court of Appeals certified this review here on the ground title to real estate in the appellate jurisdictional sense is involved. [Mo. Const., Art. 6, Sec. 12, Amend. 1884, Sec. 5.] Plaintiff, who prosecuted the appeal to the Court of Appeals, now maintains the review involves title to real estate. Defendants contend contra; and that, with the Court of Appeals having jurisdiction, its affirmance of the judgment nisi was final.

Plaintiff instituted this action in the circuit court of Jackson county, Missouri. The petition set up a contract for the sale and purchase of real estate in Clay county, Missouri; alleged that defendants had breached their agreement to convey and that damage resulted to plaintiff, with prayer accordingly. Defendants' answer, among other things, prayed for the specific affirmative relief granted by the judgment and decree nisi. Plaintiff's reply, among other things, interposed grounds for the denial of the relief prayed by defendants. The judgment, rendered May 19, 1939, in part "ordered, adjudged and decreed" that plaintiff accept the deed tendered to her by defendants; that if plaintiff refused to accept said deed "it is further ordered, adjudged and decreed that full and complete title to said lots, to-wit: Tracts 52 and 53, in Block 9, Kansas City Suburban Acreage Estates, a subdivision of Clay county, Missouri, be and hereby is vested in plaintiff and divested from defendants . . ." Thus, the judgment sought by defendants and the judgment rendered operated

directly upon the title of the real estate itself. This has been held
to vest appellate jurisdiction here (State ex rel. v. Hughes, 345 Mo.
958, 961[3, 4], 137 S. W. (2d) 544, 545[3, 5], citing authority),
even should the judgment be void on its face (Watts v. Watts, 304
Mo. 361, 365(III), 263 S. W. 421, 422[4]; State ex rel. v. Hughes,
supra, 1. c. 962 and 545[6].).

▮ Plaintiff says that defendants, by seeking affirmative relief
"affecting" title to real estate situate in Clay county, Missouri, in-
voked the "jurisdiction" of the circuit court of Jackson county
over a subject matter of which, under Sec. 873, R. S. 1939, it did not
have jurisdiction. Plaintiff first presented the issue in her motion for
rehearing in the Kansas City Court of Appeals. Defendants contend
contra; that the issue is one of venue and that plaintiff waived any
issue with respect thereto. The statute, found in the article of our
civil code entitled: "Place of Bringing Actions," reads: "Suits for
the possession of real estate, or whereby the title thereto may be
affected, or for the enforcement of the lien of any special tax bill
thereon, shall be brought in the county where such real estate, or
some part thereof, is situated." According to the able briefs of coun-
sel, there are two lines of authority; one treating the issue as in-
volving jurisdiction over the subject-matter, supporting plaintiff; the
other treating the issue as involving venue, supporting defendants.

Hewitt v. Price (Div. II, 1907), 204 Mo. 31, 102 S. W. 647, 120 Am.
St. Rep. 681, supports defendants' position. Hewitt sued in Jasper
county for the deficiency on a note after the sale, under a deed of
trust, of real estate situate in Newton county. Price's answer attacked
said sale as fraudulent. The case was tried in Barton county on a
change of venue. We ruled, notwithstanding the provisions of now
Sec. 873 and the location of the land in Newton county, defendant was
entitled to have the sale set aside if fraudulent [204 Mo. 46(III), 102
S. W. 651(3)], on the grounds that our statute relating to counter-
claims (Sec. 929, R. S. 1939) accorded defendant the right to set
up equitable defenses and to seek affirmative relief, and that said Sec.
873 did not apply to actions in which the title to real estate is inci-
dentally involved [204 Mo. 41(I), 102 S. W. 649(1)]. Defendants
also cite a portion of paragraph III of Kelly v. Hurt, 74 Mo. 561,
570, receiving a two to two vote. Earlier ▮ as well as later de-
cisions of this court hold that suits to cancel deeds directly affect the
title to real estate. Castleman v. Castleman (Div. I, 1904), 184
Mo. 432, 438(I), 83 S. W. 757, 758(1); Jones v. Peterson (1934),
335 Mo. 242, 254[1], 72 S. W. (2d) 76, 82[1]. Plaintiff questions
the soundness of Hewitt v. Price on the ground that under said
Sec. 929, a defendant's counterclaim against plaintiff must be one
"between whom a several judgment might be had in the action" (cit-
ing 57 C. J., p. 374, sec. 21, particularly notes 39 and 42), contending
the issue is not one of venue but of jurisdiction over the subject

matter, could not be waived or conferred by consent, and if a plaintiff's action is instituted in a county in which the land is not situate a defendant, under said Sec. 929, is not entitled to a several judgment in the action. We consider it unnecessary to develop this point under the instant facts.

Ensworth v. Holly (1863), 33 Mo. 370, 372, held a demurrer was properly sustained to a petition filed in Buchanan county for the specific performance of a contract for the sale of lands situate wholly in the counties of Gentry and Holt, stating: ''The Buchanan court clearly had no jurisdiction . . . '' Castleman v. Castleman, supra, held a suit in equity to cancel deeds was properly instituted in the county where the land was situate, with summons issued to the county of defendant's residence. Bray v. Marshall (1877), 66 Mo. 122 (ejectment); Snitjer v. Downing (1883), 80 Mo. 586 (ejectment); State ex rel. v. Baker (Div. II, 1895), 129 Mo. 482, 487, 31 S. W. 924, 925 (involving tax liens), and, by analogy, State ex rel. v. Grimm (Banc, 1912), 243 Mo. 667, 148 S. W. 868, also speak of the issue as involving jurisdiction over the subject matter and support plaintiff's position. State ex rel. v. Grimm, supra, held (LAMM and KENNISH, JJ., dissenting) prohibition would lie to restrain the circuit court of St. Louis, which had jurisdiction over the person of the litigants, from proceeding with an action to cancel an allegedly fraudulent deed to lands in Virginia and to remove the apparent cloud on plaintiff's title, coupled with a prayer for general relief, on the grounds a court of one state could not by its decree directly affect the title to land in another state and as our Sec. 873 made the action local, the court was ''without jurisdiction to hear and determine an action affecting the title to real estate, unless such real estate was within the territorial jurisdiction of the court''—the county where the land was situate [243 Mo. 672(II), 148 S. W. 869(2)]. We think State ex rel. v. Grimm overlooked the prayer for general relief (consult Hansen v. Duvall, 333 Mo. 59, 65[2], 62 S. W. (2d) 732, 734[2]), and a suit directly affecting the title to real estate situate outside the territorial limits of the sovereign state may be distinguished from a suit directly affecting the title to real estate situate in another county within the state.

Both sides cite Robinson v. Field (Div. I, 1938), 342 Mo. 778, 117 S. W. (2d) 308. As we read that opinion the pertinent applicable facts are to the following effect. Robinson instituted two suits, one in Clinton county to cancel a deed conveying land in that county; the other in Platte county to cancel a deed conveying land there situate. The answer filed in the Clinton county case embraced a counterclaim, asking an allowance of $35,000 to defendant; that if Robinson elected to have the farms reconveyed to him and pay defendant, then defendant asked judgment for such amount as might be reasonably due, and should Robinson elect to have defendant retain

the farms, then defendant prayed judgment for the amount due, less credit for said farms, etc. [342 Mo. 785, 117 S. W. (2d) 311.] After the Clinton county trial had commenced, Robinson filed therein an amended petition, which embraced the Platte county land, praying the court to cancel the two deeds. Defendant then dismissed the counterclaim and withdrew. Defendant contended, among other things, this amended petition attempted to bring in subject matter not within the court's jurisdiction, namely, the Platte county land. Division One of this court held defendant had, by his actions, taken the position the matters involved arose out of the same transaction and had "vested the Clinton county court with complete jurisdiction over both person and subject matter to determine the whole controversy and to do full justice . . . " [342 Mo. 1. c. 789, 117 S. W. (2d) 1. c. 314.] From the authorities cited in ruling the motion for rehearing, the court must have considered, with respect to the Platte county land, that the issue was one of venue and not jurisdiction over the subject matter, *vide*: "It is a settled rule that lack of jurisdiction of the subject matter cannot be waived or conferred by consent; but it is equally well settled that jurisdiction over the person may be waived, and we hold that waiver of venue in a transitory action comes within the latter classification." [342 Mo. 1. c. 796, 117 S. W. (2d) 1. c. 318.] Other cases supporting the view that a failure to timely plead or except to the forum waives the issue of jurisdiction, commonly speaking, or forum, properly speaking, are: The dissenting opinion in Fields v. Maloney (1883), 78 Mo. 172, 179, which was to the effect that after a change of venue in a partition suit from the county in which the land was situate and plaintiff had filed an amended petition seeking ejectment, defendant, standing trial on the amended petition, could not successfully urge that the trial court was without jurisdiction to render judgment on the amended petition. Stearns v. St. Louis & S. F. Ry. Co. (1887), 94 Mo. 317, 322, 7 S. W. 270, states: ". . . all the judges now present concur in the dissenting opinion filed in that case: Fields v. Maloney, supra." Spurlock v. Missouri Pac. Ry. Co. (Div. I, 1891), 104 Mo. 658, 661, 16 S. W. 834, states the majority opinion in Fields v. Maloney stands overruled, as do Lindell Real Est. Co. v. Lindell (Div. II, 1896), 133 Mo. 386, 395, 33 S. W. 466, 468; and Hughes v. McDivitt (1890), 102 Mo. 77, 84, 14 S. W. 660, 661. Chouteau v. Allen (1879), 70 Mo. 290, 354, sought a judgment in Mississippi county on certain bonds and to foreclose a deed of trust on lands in Stoddard, Scott, Dunklin and Butler counties. 2 Wagner Statutes, p. 954, Sec. 3, provided that in suits to foreclose deeds of trust on real estate "the petition may be filed in any county where any part of the mortgaged premises is situated." We said: "After a court, which has general jurisdiction over a certain class of causes, proceeds without objection to the hearing and determination of a cause belonging

to that class, it' is quite too late in this court to raise objections to the irregular exercise of such jurisdiction; such objections, even if originally valid, lose their force when waived by pleading to the merits." Johnson v. Detrick (Div. I, 1899), 152 Mo. 243, 253(II), 53 S. W. 891, 893(2), contains dictum reading, speaking of a suit in partition, by way of illustration, "brought in a circuit court of a county in which none of the property lies, and none of the parties have their domicile, and the parties failing to plead or except to the forum—the question of jurisdiction, commonly speaking, or forum, properly speaking, is waived. Or, stated otherwise, inherent want of jurisdiction cannot be waived, but objection to the venue may." "Jurisdiction connotes the power to decide a case on the merits, while venue connotes locality, the place where the suit should be heard." 21 C. J. S., p. 33, n. 87. See also 67 C. J., p. 12, n. 17; 1 C. J. S., pp. 946(14), 949(27); Paige v. Sinclair, 237 Mass. 482, 483, 130 N. E. 177, 178[2-4].

Our circuit courts are courts of general and not limited civil jurisdiction (Mo. Const., Art. 6, Sec. 22; Sec. 2100, R. S. 1939; Davidson v. Schmidt, 256 Mo. 18, 164 S. W. 577; Chicago, B. & Q. Ry. Co. v. Gildersleeve (Banc), 219 Mo. 170, 177, 191, 118 S. W. 86, 88, 93). Following Robinson v. Field, supra, and other analogous cases we hold that plaintiff, first presenting this point in her motion for rehearing in the Kansas City Court of Appeals, waived any issue with respect to the venue.

We refer to the opinion of the Court of Appeals for a more detailed statement of the facts (144 S. W. (2d) 837), repeating herein such facts as we deem pertinent to the defendants' right to hold the decree of specific performance entered nisi.

Mrs. Mary Griffith, Mrs. Floy Stean, Mrs. Seth White, and Harry Griffith, as owners and being desirous of selling certain real estate in Clay county, Missouri, described as Kansas City Suburban Acreage Estates, executed a trust agreement conveying the title to defendant Kansas City Title and Trust Company (hereinafter designated Title Company), and appointing the Southern Reconstruction Corporation (hereinafter designated seller) as selling agent and the National Bank and Trust Company of North Kansas City as financial trustee to receive installment payments made on lots purchased in said Estates.

Harry Griffith died in January, 1938, and Mrs. Harry Griffith was appointed administratrix of his estate.

June 13, 1934, the seller sold unimproved Lots 52 and 53 in Block 9 of said Estates to plaintiff for $425; $225 being then paid and the balance of $200 being payable in consecutive monthly installments of $8 each, the first becoming due September 13, 1934. Plaintiff was to pay all taxes due and payable after 1933. The seller agreed to cause said real estate to be conveyed to plaintiff by "special warranty

deed" (subject to certain exceptions that need not be detailed) "upon full and complete payment of the purchase price hereinbefore set forth, together with all interest thereon, as hereinbefore provided for . . . It is agreed by the Buyer that when payment of any general or special tax upon or against the real estate herein described, or any part thereof, shall have been in default for a period of thirty days from the date same is due and payable, the Seller or the Owner or assigns may pay all such taxes so overdue and in default, and the same shall become, be and remain a lien upon the real estate described in this contract and, with interest thereon from date of payment thereof at the rate of eight per cent per annum, shall be repaid by the Buyer on demand."

The parties acknowledged they "understood and agreed" that the Title Company held title under a trust agreement whereby the Title Company "is authorized to convey the said real estate herein described to the Buyer herein upon full performance by said Buyer of all the terms of this contract."

The contract further provided: "Time is of the essence of this contract."

Plaintiff, through her husband, Mr. Rice, who acted for her, finished paying the $8 purchase price installments November 4, 1936, but did not make all individual payments promptly. Unknown to plaintiff or her husband the owners caused the Title Company to convey under date of December 3, 1936, a strip 25-feet in width off of said Lot 53 and other lots to the State of Missouri for highway purposes. The recited consideration was $1.

Mr. Rice testified that when he completed the purchase price payments in November, 1936, he requested a deed and was informed he would get his title; that he was paying on a couple of other tracts and let the matter "ride;" that in January, 1938, he went to Liberty to pay his taxes and to Harry Griffith's home, with whom he had transacted the business; that Mrs. Griffith told him Mr. Griffith was ill; that he informed her he had never received his deed to the lots involved and they had been paid for ever since 1936; that he would take care of the taxes; that she told him he could get his title from the Title Company; that then he paid the taxes, he thought two years' taxes; that he took the matter up with Mr. Smith of the Title Company; that Mr. Smith informed him of the deed to the State; that he would have to exclude the 25-foot strip, and that no one had previously mentioned said deed to him.

The Title Company, pursuant to instructions received, under date of January 12, 1938, executed a deed conveying Lots 52 and 53 to plaintiff, excepting therefrom the 25-foot strip theretofore conveyed to the State, and mailed the deed to plaintiff.

Plaintiff refused to accept this deed. Mr. Rice consulted H. B. Pyle, an attorney, who, on January 17, 1938, returned the deed to the

Title Company, his letter stating: "Mrs. Rice's contract calls for all of Lots 52 and 53, and her contract was completed in November, 1936. She refuses to accept this deed, and she demands either a deed in compliance with her contract or for such an adjustment as will fully compensate her for the failure to comply with the contract. Trusting that this matter may be straightened out without unnecessary expense of litigation, I am . . . ." Mr. Rice testified he informed Mr. Pyle they would not accept the property and he did not authorize him to request a new deed.

The Title Company answered, under date of January 18, 1938, stating Mr. Griffith, who had been looking after the interests of the equitable owners, had been buried the preceding Friday, and assured plaintiff the members of the family would look into the matter and get in touch with her as soon as practicable.

Soon thereafter, the latter part of January, 1938, Mr. Rice met Mrs. White, one of the owners, a defendant and a sister of Mr. Griffith, in Mr. Pyle's office. He testified they talked the matter over; that he informed her he would not accept Lots 52 and 53; that "we" had two other tracts on which there was something owing; that they discussed and she thought they might work out an adjustment by crediting the payments on Lots 52 and 53 on this other property and that the owners would take Lots 52 and 53 back. Mr. Rice testified he was "cramped" for a little money at the time. This testimony stands uncontradicted.

Later, plaintiff employed attorney Raymond E. Martin, who several times sought to conclude the adjustment, writing James S. Simrall, attorney for the owners, on March 7, 1938, in part: "I would appreciate if you would give me some word at ▮▮▮▮ your earliest convenience as to what action your client is going to take in this matter. I am withholding action until I can have some definite word on adjustment."

A quitclaim deed, dated March 18, 1938, was offered in evidence whereby the State Highway Department purported to convey to the Title Company the 25-foot strip in so far as it affected said Lot 53. It did not undertake to reconvey any other portion of the 25-foot strip passing to the State under the Title Company's deed of December 3, 1936. This deed recites a consideration of $1 and was procured by one of the "owners," who testified she had no knowledge of any consideration being paid.

Mr. Rice testified that the highway had been graded on both sides of the strip covered in the deed from the State Highway Commission to the Title Company. Mrs. Griffith testified, on direct examination, that the State never did anything with "these lots;" but on cross-examination, when asked if it was graded down to these lots, answered: "I don't think so. I will not say for sure."

On April 6, 1938, plaintiff received the Title Company's deed purporting to be in compliance with the contract. She sued May 13, 1938.

The county collector of Clay county identified three tax receipts for the years 1935, 1936 and 1937, made out to Harry Griffith and bearing date of "January 11, 1938." He testified they were paid on that date, collected by one of his deputies; that he repaid Mr. Griffith, and that plaintiff, Mrs. Rice, asked to leave the money there to reimburse the proper persons. January 11, 1938, is the date Mr. Rice testified he paid the taxes and was informed by Mrs. Griffith when he went to see about the title that Mr. Griffith was ill.

■ Theoretically, equity supplies defects in the law and one having a good defense to an action at law ordinarily may not resort to equity for relief. An action at law, such as damages for the breach of the contract, is considered to afford an adequate remedy where the subject matter of the contract is personal property which is bought and sold in the market and in the absence of special circumstances or some applicable statute specific performance is not decreed. A specific tract of land, however, is regarded as "unique and impossible of duplication," "a favorite and favored subject" of property, having "a peculiar value," and, hence, a purchaser may have specific performance of a contract to convey land irrespective of special facts showing the inadequacy of a legal remedy. [2 Restatement, Contracts, Sec. 360, p. 643(2); 58 C. J. 1025, nn. 55-57.] These considerations refute the thought that ownership of land is so oppressive that a vendor thereof may enforce specific performance of a contract to purchase for a specified pecuniary sum on the theory that damages in money is an inadequate remedy. The first considerations destroy their counterpole. Reasoning "that the vendor is a trustee for the purchaser as to the land, and the vendee a trustee for the vendor as to the purchase money," it has been observed in this State that the doctrine of specific performance on behalf of a vendor of land is based on the theory of mutuality of remedy (Paris v. Haley, 61 Mo. 453, 457) and that mutuality of remedy is essential to a decree of specific performance (Falder v. Dreckshage (Mo. App.), 227 S. W. 929, 935[3]; Missouri Annotations, 2 Restatement of Contracts, sec. 372). In proper instances this may be; but it does not follow that the doctrine of mutuality requires specific performance to be obtainable alike by both parties to the agreement.* "There is no doubt, however, that it is not correct to say that specific perform-

---

*That portion quoted from Fry on Specific Performance, pp. 25, 26, by the Court of Appeals at page 843[7] of 144 S. W. (2d) was said in Paris v. Haley, 61 Mo. l. c. 458, to be obviously not referable to a case "where the vendor has the notes of the purchaser in his pocket, but to cases where the suit at law must be for damages for not complying with the contract of sale." A like observation is as applicable to the passage quoted from Pomeroy's Specific Performance of Contracts, 3d Ed., p. 12, by the Court of Appeals at 144 S. W. (2d) l. c. 843[4].

ance is available to·one party in all cases in which it is available to the other.'' [2 Restatement, Contracts, p. 682.] For instance, we have held that a vendee, if he so chooses, may have specific performance of a contract to convey land by a husband although the husband, by reason of his wife's failure to contract and refusal to join in the conveyance, is unable to convey the precise estate contracted for. Tebeau v. Ridge (Banc), 261 Mo. 547, 567 (V), 170 S. W. 871, 876[5], L. R. A. 1915C, 367 (overruling the majority and approving the dissenting opinion in Aiple-Hemmelmann Real Estate Co. v. Spelbrink, 211 Mo. 671, 111 S. W. 480, 14 Ann. Cas. 652); Scheerer v. Scheerer, 287 Mo. 92, 107(VII), 229 S. W. 192, 197[11]. ██ Somewhat similar situations may arise justifying equitable relief. In the instant case plaintiff invoked her constitutional right to a trial by a jury (Mo. Const., Art. 2, Sec. 28). To defeat this right defendants seek equitable relief on pleadings and evidence which disclose, when viewed most favorably, the barest minimum upon which to base such relief. It is difficult to conceive of a case of this nature wherein the law may be said to afford an adequate remedy if specific performance be decreed. The pleadings do not allege and the evidence does not establish that ownership of the land is burdensome. Such remote and theoretical conclusion rests in speculation and conjecture. The real relief sought by defendants under the record is the retention of the payment of the full purchase price made by plaintiff. It occurs that ordinarily after a vendee has fully performed and a vendor of land is in complete possession of the agreed purchase price money that he may adequately defend his rights in an action at law. [Consult Haffner v. Dobrinski, 215 U. S. 446, 451, 54 L. Ed. 277, 30 Sup. Ct. 172; Paris v. Haley, 61 Mo. 453, 458.] Under one clause of the contract plaintiff was entitled to receive her deed on November 4, 1936, the date she completed the purchase price payments. Thereafter, on December 3, 1936, defendants voluntarily put it out of their power· to perform by the conveyance to the State. There is naught of record indicating that the owners had changed their position in any respect at the time of the conference between Mrs. White and Mr. Rice the latter part of January, 1938. That conference was notice to defendants of plaintiff's unwillingness to accept a deed to Lots 52 and 53 and, while plaintiff did not demand the actual return of her money, the crediting of the payments on the purchase price of the other lots in compliance with the discussion, would constitute, in effect, a return of said moneys. Notwithstanding defendants' affirmative breach of the contract which gave rise to this litigation, they, with notice of her unwillingness to be bound before they had changed their position, ask a court of conscience to excuse their default and exercise an extraordinary and discretionary power to hold plaintiff to the strict letter of her engagement. Mr. Pyle's letter was received by the Title Company on January 18, 1938. The corrected deed reached plaintiff

April 6, 1938, over two and a half months later. In Montgomery v. Wise, 138 Mo. App. 176, 189, 190, 120 S. W. 100, 104, plaintiff, who sought the recovery of a part payment on a contract to purchase land, notified defendants on November 17th that he expected compliance with the contract. Defendants tendered a deed in compliance with the contract on the following January 19th. A verdict finding defendants did not comply within a reasonable time was upheld. Section 8760, R. S. 1939, provides: "Whenever in the opinion of the state highway commission the advantageous use of any interest in land . . . which has heretofore or may hereafter be acquired by the commission has ceased, the state highway commission shall have authority to convey the same for the best available cash price by deed signed by its chairman or vice-chairman and attested by its secretary: . . . *Provided further,* that when any land . . . has been donated without charge whatsoever, by the owner and grantor of said property to the purpose of state highway construction or maintenance and such grantor is still in possession of contiguous property, the same shall revert to such original owner without cost to him if and when relinquished by the State." The quitclaim deed from the State Highway Commission to the Title Company is of record, nothing more. No consideration passed therefor. The remainder of the 25-foot strip conveyed by the Title Company to the State stands unaffected. With the highway graded on each side of the lot involved and a break in the highway occasioned thereby, the inference from this record is that said land had not ceased to be of advantageous use to the State.

The amount involved is not large, but we think the law requires the case to be remanded. Plaintiff's petition was for damages for a breach of contract by defendants. Defendants' answer denied the breach, and by additional allegations sought and prayed for a decree of specific performance. Plaintiff's reply denied the new matter of answer, and for answer to defendants' suit for specific performance set up matter to defeat said relief. An action for damages for the breach of a contract is premised on the existence of the contract and is at law. A suit in equity to decree a rescission and for the return of the purchase money proceeds on the theory the contract has been disaffirmed. Plaintiff has consistently asserted the case was at law. We find no request for affirmative equitable relief on behalf of plaintiff. The judgment is reversed and the cause is remanded. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.