HENRIOID v. NEUSBAUMER, *Plaintiff in Error.*

1. **Equitable relief against Fraudulent Partition Sale:** PARENT AND CHILD. The defendant, being the step-father of the plaintiffs, after their mother's death, by a course of bad treatment, drove all but one of them from the home which had been left them by their father, and continued himself to occupy the property, as he had done for years previously. The plaintiffs were all minors at the time. Shortly afterwards he caused himself to be appointed guardian of the one who remained with him, and as guardian, immedi-

ately instituted proceedings for the partition of the property. The writ was served upon the present plaintiffs, but being unable to read, they did not understand what it meant. · The proceedings resulted in a decree for partition, and, at the instance of the present defendant, a sale was ordered. · The sale was advertised according to law, and defendant became the purchaser at the price of $100. The land was, at the time, worth $700 or $1,000. Defendant paid the purchase money, but it was subsequently refunded to him by the sheriff, none of the plaintiffs receiving any share of it. Defendant did not inform any of the plaintiffs that the partition proceedings were pending, or that a sale was to take place, although he often saw them, nor did any of them, except, perhaps, the eldest, know of the fact; neither did he mention the matter to any of his neighbors. Plaintiffs having sued to have the sale and the sheriff's deed executed in pursuance of it set aside as fraudulent; *Held*, that they were entitled to such relief, and a decree in their favor was affirmed.

2. ———: FRAUDULENT IN PART, FRAUDULENT IN TOTO. Under the circumstances detailed above, the fact that at the time of the sale one of the present plaintiffs was of age, and perhaps knew that it was to take place, and that the present defendant was not the guardian of any but the youngest, and, therefore, was not by law disabled to buy the interests of the others, was held no obstacle to a decree setting aside the entire sale. A court of equity will not go into vulgar fractions to ascertain what proportion of such a transaction may be upheld.

3. ———: NO LACHES. Plaintiffs did not bring their suit until eight years after the sale. In the meantime defendant had put improvements on the land to the value of $500. Plaintiffs all lived in the same county during the whole time; but it was not shown that they discovered the fraud which had been practiced on them before the improvements were made; *Held*, that no such laches was proven as ought to preclude the plaintiffs from equitable relief.

*Error to Jefferson Circuit Court.*—HON. LOUIS F. DINNING, Judge.

This was a suit to set aside a partition sale and a sheriff's deed made thereunder, as having been fraudulently procured by defendant. The suit was instituted in April, 1874. The sale took place in May, 1866. At that time the plaintiff, Albert Henrioid, was fourteen years of age, and the other plaintiffs, his brothers and sister, were respectively sixteen, eighteen, nineteen and twenty-one years of age. Al-

bert was living with defendant on the land in controversy. The other plaintiffs were living in the same county within a few miles of the land. The other facts appear in the opinion of the court.

*J. L. Thomas & Bro.* for plaintiff in error.

The sale in partition should not have been set aside as to any of the defendants in error, except probably Albert, for whom plaintiff in error was guardian. The others were guilty of such laches in not interfering to set the sale aside, that they ought not to be heard now. Henry was of age at the time the sale took place; he was of age one year before the sheriff executed his deed, that being done one year after the sale. He stood quietly by for eight years before instituting any proceeding to set the sale aside, and in the meantime plaintiff in error put valuable and lasting improvements on the premises. It is too late for him to complain. He admitted he knew of the sale a few days after it took place, while a disinterested witness testified that he knew of it before it took place. See Bigelow on Fraud, p. 441. The same doctrine will apply to Elizabeth, who became of age one year after the sale; to Alexander, who became of age two years afterwards, and Louis, who became of age four years before this suit was brought. They all stood quietly by for from four to eight years and never questioned Neusbaumer's title, while it was known he claimed the land and was making improvements thereon worth $600. In fact these parties based their right to have this sale set aside on the fact that plaintiff in error was guardian for Albert. It is unnecessary to quote authorities that no one but the infant himself can take advantage of his infancy or be benefited by a fiduciary relation existing between him and his guardian. The others were living away from home at the time the partition suit was instituted, and continued away, acting and doing for themselves, ever afterwards, never going

to Neusbaumer for advice or expecting him to protect their interests. None of these parties, except Albert, showed any reason why this sale ought to be set aside, and hence the judgment of the court below should be reversed and the cause remanded, with directions to set the sale aside as to Albert alone, and decree an account of the improvements.

*J. J. Williams* for defendant in error.

1. Plaintiff in error could not buy the interest of Albert Henrioid at the partition sale, and especially at an under-value, as he attempted in this instance to do, he having bid but $100, when the proof shows the land was worth from $600 to $900. 1 Story Eq., (6 Ed.) § 317, p. 354. 2. The evidence shows a case of the most outrageous fraud on the part of plaintiff in error; shows that he drove the defendants in error away from their home after their mother's death, all except the youngest child, and then, in a secret manner, procured himself to be appointed guardian of it, and without the knowledge of any of them, got an order of sale in partition made and the land sold, and bought it himself for a trifle, while they were all, or nearly all minors, and no doubt regarded him as their natural guardian and protector. The decree of the court was right, and as he got the money he paid out back from the sheriff, he has suffered no loss except the little costs he paid.

HENRY, J.—About the year 1853 one Henry Henrioid died in Jefferson county, seized of the tract of land in controversy, leaving a widow and five children, the plaintiffs herein. After the death of said Henry the defendant and his widow intermarried, and they and the children continued to reside on the land. In February, 1864, the mother of the plaintiffs died, and they, except the youngest, Albert, were subsequently driven from their home by the cruelty of the defendant. In 1864, on his motion, he

was appointed guardian of Albert, and immediately, as such guardian, filed a petition in the circuit court of said county for a partition of the land among the heirs, alleging that it was not susceptible of division, and obtained a judgment for a sale. It was publicly sold by the sheriff in May, 1866, and the defendant became the purchaser at the price of $100, ten per cent. of which was then paid, and for the balance he executed his promissory note, which was subsequently paid by him to the sheriff, who afterwards returned it to him. The land was then worth between $700 and $1,000.

Defendant testified that he offered to the plaintiffs, each, his share of the purchase money, and that the sheriff had previously offered it to them, but they declined to receive it. They testified that neither the defendant nor the sheriff ever offered them any portion of the money for which the land was sold. The sheriff did not testify. All but one of the plaintiffs were minors when the sale occurred, and could neither read nor write. They testified that when they were served with process in the partition suit they did not understand what it meant. The defendant testified that he had lived for some years on the farm, had paid taxes and reared the children, and that he went to Abner Green, Esq., an attorney, and laid the matter before him, and was by him advised to the course he pursued. Mr. Green, on the contrary, testified that defendant came to him and said that he wanted the land sold, and inquired how it could be accomplished. The sale was advertised according to law, but several of defendant's nearest neighbors were not aware that it was to be sold, or that a suit in partition had been instituted. They testified that they frequently saw defendant and conversed with him, but the sale of the property or the pendency of the suit was never mentioned by him. Several of the plaintiffs were in the habit of visiting defendant during the pendency of the partition suit, but he never mentioned the subject to them. The plaintiffs testified that they knew nothing about it,

and there is no evidence, other than the sheriff's return to the writ in the partition suit, tending to prove that either of them, except Henry Gaspard, was aware that the land was to be sold, and the only evidence tending to show that he knew it was the testimony of Frank Smith, to the effect that about three weeks before the sale he heard John Smearman tell Henry, in De Soto, that the land was to be sold. Henry testified that this conversation occurred after the sale. The defendant testified that after he purchased the land, but at what time he did not state, he erected upon the land a barn which cost him $500, cleared five acres of land and made a few other trifling improvements.

To state this case is to decide it. The defendant, after having occupied the land from the date of his marriage 1. EQUITABLE RE- until the death of the mother of plaintiffs, LIEF AGAINST FRAUDULENT PAR- as soon as she died, commenced systemati- TITION SALE: pa- rent and child. cally to mistreat and abuse the children, except the youngest, and continued it until they were driven from their home. He continued in possession, and (the evidence warrants the statement) procured his appointment as guardian of the child that remained with him in order to defraud his ward and its brothers and sisters out of the little estate which they inherited from their father. The purchase money paid by him was returned to him by the sheriff—why it does not appear. He holds the land, worth from $700 to $1,000, and all he in fact paid was the lawyer's fee in the partition suit and the costs of that suit, fraudulently instituted by him. He claims to have reared the children and expended large sums of money in paying taxes and making improvements. They certainly owe him but little for their rearing, for they can neither read nor write, and if he had done his duty toward them they would have been able to read the process served upon them in the partition suit, and would not now be here alleging that defendant took advantage of their ignorance to cheat and defraud them. The partition suit was conceived in fraud, which taints the whole proceeding.

A court of equity will not go into vulgar fractions to ascertain what proportion of such a transaction may be upheld. The defendant's conduct toward these plaintiffs, his step-children, was shameful, and a party guilty of such conduct should not be heard when he asks that he may have a fractional part of the avails of a proceeding which was entirely fraudulent.

2. ——: fraudulent in part, fraudulent in toto.

There is no such laches here as precludes plaintiffs from receiving the relief they ask. It was not shown that, without asserting their rights, they stood by and saw defendant making improvements on this land after they were aware of the fraud which had been perpetrated upon them. There is nothing in the evidence tending to show that defendant was actuated in his conduct by any honest motive; but, on the contrary, it conclusively proves that he deliberately planned a scheme to defraud his ward, and other step-children, out of their small patrimony. The judgment of the circuit court was a most righteous one, and is affirmed. All concur.

3. ——: no laches.

AFFIRMED.