STANTON FIELD, Respondent, v. PEARL BROWN et al., JOSEPH BROWN, Interpleader, Appellant.

Kansas City Court of Appeals, April 4, 1921.

1. MORTGAGES: Deeds of Trust: Powers of Trustee: Trustee with Consent of Parties and Bidders Could Receive Bids as Though Title was Clear and Deduct Amount Due on Prior Deed of Trust. Where all parties agreed, with full understanding by bidders, a trustee, under a second deed of trust, could accept bids at sale as if. land was free of all deeds of trust, and thereafter deduct from amount paid by purchaser at sale amount due on first deed of trust.

2. ———: Pledges: Assignor of Collateral Security not Prejudiced by Method of Sale and Application of Proceeds. Where one assigneu a note payable to him as collateral security for a note executed by his son to another, who also held two notes, secured by second deed of trust on son's land, such a one cannot claim the note which was assigned as against the assignee, where the surplus derived from sale of land under second deed of trust, after payment of notes secured thereby, was applied by assignee to payment of note collaterally secured.

3. EVIDENCE: Consideration Named in Trustee's Deed not Conclusive. Where a trustee's deed shows on its face that the real price paid for land was different than the sum recited therein, the price named therein is not conclusive on the parties and can be denied or explained.

4. INTERPLEADER: Trial Practice: Evidence: Introduction Alone of Note Regular on its Face in Possession of Assignee Does not Entitle Assignor to Judgment. In an action against the maker of a note where the assignee of the note for collateral security and the assignor thereof were required to interplead, the assignor was not entitled to judgment when the assignee introduced the note and rested, though it be claimed he introduced the note as interpleader and not as plaintiff, because the burden was on assignor to go forward with his proof as the note bore an assignment in, all respects regular on its face and was in the possession of the assignee.

Appeal from the Circuit Court of Clay County.—*Hon. Harris L. Moore*, Special Judge.

AFFIRMED.

*Martin E. Lawson* for respondent.

*Daniel H. Frost* and *Erasmus C. Hall* for appellant.

TRIMBLE, J.—The controversy herein is over which of two interpleaders is entitled to the proceeds of the judgment on the promissory note sued on in the main action herein. The note was executed on May 7, 1910, by Pearl Brown and Galen Brown, to Joseph Brown for $2000, with eight per cent interest from date, and was

assigned by the payee, Joseph Brown, to the plaintiff herein, Stanton Field.

The latter brought suit on the note against the makers, and they filed answer admitting the execution thereof, but set up that Joseph Brown was claiming to be the owner of the note and the makers were unable to decide to whom they should pay it, and asked that Joseph Brown be made a party and that he and plaintiff, Field, be required to interplead therefor.

Thereupon the necessary orders were made; Joseph Brown became a party and he and Field each filed their respective interpleas. Evidnce, offered in support of each, was heard and the trial court rendered judgment against defendants Pearl and Galen Brown for the amount due on the note; and the court expressly found that plaintiff held the note as collateral security for the payment of a certain note for $1,039.08, mentioned in plaintiff's interplea and hereinafter referred to, on which last named note there was due at the time of the judgment the sum of $1394.42, and that plaintiff· and interpleader, Field, was entitled to payment of said sum of $1394.42, with interest at 6% from date of judgment, out of the judgment against defendants on the note sued on, and after this payment to plaintiff and interpleader, Field, and the payment of the costs herein, the residue of the judgment on the defendants' note should be paid to Joseph Brown. Judgment was entered in accordance therewith. Whereupon Joseph Brown appealed.

The record discloses the following facts out of which this controversy grew:

Virgil D. Brown owned a farm of 127 and a fraction acres in Clinton County, upon which he, on March 17, 1910, executed a deed of trust to Joel Funkhouser as trustee for Claude Funkhouser to secure a note to the latter of $5750.

On August 28, 1911, Virgil D. Brown executed, on said land, a second deed of trust (expressly subject to the first) to Herbert F. Bland, trustee for Emma S.

Bland, to secure two notes of even date therewith for $1000 each.

Time went on and no interest was paid on the Funkhouser debt, so Miss Bland wanted her money and Funkhouser was demanding his interest. In his efforts to obtain the money for these purposes, Virgil D. Brown went to Field at Liberty, Missouri, for help. Field was Brown's brother-in-law and was rearing his motherless child. Brown told Field he needed about $3000 and would give him a second mortgage on the land in order to pay the Funkhouser interest and to take up the Bland notes. Field agreed to let him have the money provided Brown would furnish additional security. This Brown agreed to do, and he got his father, Joseph Brown, to consent to assign the note he held on Galen and Pearl Brown to Field as additional security over and above a second mortgage on the land. Thereafter on January 22, 1913. Field, Virgil Brown, Joseph Brown, Herbert F. Bland as agent for Miss Bland, and Claude Funkhouser met at Plattsburg to settle matters. The interest on the Funkhouser note amounted, on that day, to $103.08. Instead of having Field to pay off the Bland notes for $2000 and Virgil D. Brown executing a new second deed of trust on the land, the two Bland notes of $1000 each were assigned to Field. Virgil D. Brown gave Field a note for $1039.08. of even date, due in one year, earing six per cent compound interest signed by himself and his father, Joseph Brown, and the latter also assigned and turned over to Field the $2000 Galen and Pearl Brown note. Thereupon, Field paid the $1038.08 interest due on the Funkhouser note and it was duly duly credited thereon. Field testified that the $2000 Galen and Pearl Brown note was assigned to him by Joseph Brown as collateral security for the $1039.08 note given to him for the interest he paid on the Funkhouser debt. Joseph Brown, however, claims that the $2000 Galen and Pearl Brown note was assigned to Field as collateral security for the Bland notes which were already secured

by the second deed of trust on the land.  As hereinabove stated, the Chancellor expressly found that it was given to secure the $1039.08 note, and the evidence justifies the finding.

Virgil D. Brown paid nothing on any of the notes and none of them were paid.  The interest was accumulating and Field was wanting payment made.  For some time both Virgil D. Brown and Field tried to sell the land at private sale, but were unable to do so.

Finally, Field caused the farm to be advertised for sale under the second deed of trust, the sale to be held at the Courthouse in Plattsburg on February 7, 1916.  Although the sale was advertised as being subject to the first deed of trust, yet Virgil D. Brown and Field had agreed that the land would be sold *as if* free of all deeds of trust, they thinking that it would sell better that way as bidders could then bid intelligently, knowing what the land would cost without having to carry in mind at each bid the amount of the first mortgage, necessary to be added to the bid in order to know what they would ultimately have to pay for the land.  Thereupon the attorney conducting the sale for Field and Bland, the trustee, announced, in a talk prior to the sale and in the presence of Field, Virgil Brown, Joseph Brown, Herbert F. Bland, the trustee, and the large crowd present, including a number of land buyers, that the land would be sold *"as though* clear" and that an arrangement had been made with Funkhouser whereby he would either accept payment of his mortgage debt or allow it to continue on the land as the purchaser might prefer, and that the amount of his debt could be deducted from the bid.

The auctioneer cried the sale for a long time.  McDermott, who bought the land at the sale, in order to reassure himself as to the manner in which the land was being sold and the bids could be made, asked the trustee, before commencing to bid, if the land was being sold as though clear and the trustee told him it was.  The land

was finally struck off and sold to McDermott at his bid of $71 per acre, which made the aggregate, bid in that way, $9,073.80, but taking out the amount of the Funkhouser debt, to-wit, $6,142.09, left $2,931.71 as the true amount the land brought subject to the first deed of trust. Thereupon, after the sale, the trustee, the attorney, McDermott the purchaser, Field, Virgil Brown and Joseph Brown (so certain of the witnesses say, though Brown says he was not present), went to the Funkhouser bank and there, together with Funkhouser, figured up the notes and settled. Of the $2931.71 left after deducting the Funkhouser debt (McDermott having agreed to assume that and Funkhouser being willing to let it remain on the land), the costs of the sale, amounting to $104.20, were paid, and then the amount of the two Bland notes held by Field, and amounting to $2702.64, were paid, leaving a balance of $124.87 which Field, in accordance with an agreement with Virgil D. Brown, credited on the $1039.08 note held by Field. The evidence is that the figures were gone over carefully and shown to Virgil D. Brown and that no objection was made by anyone.

McDermott asked Virgil D. Brown for a quit-claim deed to the land, which the latter readily consented to give, and it was drawn up, executed by Virgil D. Brown and by him taken out to a neighboring village, where his wife was visiting, for her signature and acknowledgment, which were obtained, after which it was returned to McDermott.

In drawing the trustee's deed, the consideration of the sale was written as being $9,073.80 nstead of $2931.71 the real price paid for the land under the second mortgage. But the deed contains a recital that it is *made,* and *stamped,* "subject to the indebtedness subsisting as against the purchase price herein specified." The deed was then stamped with a $3 revenue stamp, being the stamp called for by a consideration of not more than $3000 and the proper stamp for a consideration of $2931.71.

It was not until about three years after the sale that Virgil D. Brown came to the conclusion that the land actually sold for $9073.80 under the second deed of trust and that therefore he was entitled to receive, as the owner of the fee, the surplus above the amount of the second deed of trust and the costs of the sale, which surplus would be something in the neighborhood of $6000. The testimony in behalf of interpleader, Field, shows that the land, at the time of the sale, was worth from $75 to $80 per acres. The testimony in behalf of Joseph Brown's interplea was that it was worth more than that, one witness placing the value of the land in 1916 at from $80 to $85 per acre; another said $87.50 per acre was too low, and that in his opinion the land "*is* worth" $100 per acre which would be his idea of the value at the time of the trial, November 1919. It was claimed that before the foreclosure sale McDermott had offered $87.50 per acre, but it developed in evidence that, in this offer, he was putting in only a little cash and was trading in other property at a valuation greater than the price he had paid for it only a short while before.

Interpleader Brown's theory now is that the land actually sold for $9073.80 subject to the first deed of trust, and as the trustee's powers were only such as the deed of trust conferred upon him, it was his duty thereunder to pay over the surplus, above the second deed of trust and the costs of sale, to Virgil D. Brown. Doubtless this would have been his duty if the land, without special arrangement, had been put up and sold for that much. But if, under an arrangement made between the parties, what was done was merely a method of regulating the manner of bidding, known and understood by all parties, then the land, subject to the first mortgage, did not sell for the $9073.80 but brought under the foreclosure of the second deed of trust only $2931.71. Furthermore, so far as concerns the limitation of the powers of the trustee by the terms of the deed of trust, it has been held that, in order to make a clear title to the purchaser at the foreclosure of a second deed of trust, it is

proper for the parties to agree that the trustee should, out of the proceeds, pay off the prior incumbrance. [Scott v. Shy, 53 Mo. 478, 482; Haber v. Brown, 101 Cal. 445.] So, also, it has been held that at a sale under a prior mortgage the parties may agree that the sale is to be subject to a second mortgage which is to remain a lien and be given priority over the first one. [Brown v. Barber, 244 Mo. 138, 150, 151; 27 Cyc. 1169; Horner v. Scott, 242 Pa. 432.] If this be so, then we are unable to see wherein there was any inability on the part of the parties interested to make the agreement whereby the method of bidding would be as if the land were sold clear, the amount of the first mortgage to be taken out of the bid leaving the remainder as the real sale price paid for the land subject to the first deed of trust; and to confirm the sale, as thus made, Virgil D. Brown and wife made a quit-claim to the purchaser, which manifestly he would not have done if he had had any idea his land was sacrificed or that there was any thought that the land had sold *subject* to the first deed of trust for $9073.80, which would have entitled him to a large surplus.

But it is urged that Joseph Brown was a surety on the note given by Virgil to Field and that such surety's rights cannot be thus disposed of without consulting him and gaining his consent. Passing any consent which might possibly be implied from Joseph Brown's standing by and making no objection to what was done, it appears that Joseph Brown's surety rights involved herein are those arising out of the fact that the $2000 note used on herein was assigned as collateral security for the $1039.08 note given by Virgil D. Brown and Joseph Brown to Field for the interest the latter paid on the Funkhouser note at Virgil D. Brown's request. Joseph Brown claims it was given as collateral security for the Bland notes, which were already secured by the real estate second mortgage, but the Chancellor specifically found otherwise and we see no reason to differ with or from him on the evidence as to that. The fact

that Joseph Brown also happened to be surety on one of the Bland notes does not affect the matter here, since the real price at which the property sold under the second deed of trust more than paid them off.

We need not go into the question, however, of whether the surplus at the sale under the second deed of trust constituted a fund for the payment of the separate and distinct note to Field, on which Joseph Brown was surety, for the reason that the only surplus that remained, under the sale as it really was made, was applied on the note for $1039.08 on which Joseph Brown was surety and the benefit of which he gets under the judgment rendered herein.

It is urged that the price named in the trustee's deed is conclusive on the parties and cannot be denied or explained. We cannot agree to this, especially as the deed shows on its face that the real price was otherwise than the sum named.

We are unable, as a matter of law, to place the construction on the foreclosure of the second deed of trust which interpleader Joseph Brown would have us to place thereon; neither can we, as a matter of fact, find from the evidence, the things which he claims was done at that sale. The chancellor has found against him and the evidence is certainly not such as to justfy us in disagreeing with him.

It is also urged that when Field introduced the note and rested, judgment should have gone for defendant interpleader Brown. The record, however, shows that Field, as plaintiff in the suit against Pearl and Galen Brown introduced the note. If it be said that he, as interpleader, introduced it, then as it bore the assignment of Joseph Brown and was in all respects regular on its face and was in Field's possession, the burden was on interpleader Brown to go forward with his proof, else judgment must immediately have been rendered for Field.

We are of the opinion that the judgment should be affirmed. It is so ordered. All concur.