**William Blair HUGHES and Mary Elizabeth Mosby, Plaintiffs-Respondents,**

v.

**George D. SPENCE et al., Defendants-Appellants.**

**No. 51583.**

Supreme Court of Missouri,
Division No. 1.

Nov. 14, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 12, 1966.

Opinion Modified on Court's Own Motion Dec. 12, 1966.

McHaney, Billings & Welman, by William H. Billings, Kennett, for plaintiffs-respondents.

Riddle, O'Herin & Newberry, Malden, for defendants-appellants, George D. Spence, Everett Braden, Mittie V. Spence.

WELBORN, Commissioner.

This action began by a petition filed October 3, 1959, in the Pemiscot County Circuit Court by contingent remaindermen under a trust involving real estate situated in Dunklin County to cancel and annul 1930 judgments of that court, terminating the trust and vesting title to the real estate involved in the life beneficiary of the trust. Dr. E. L. Spence, named as party defendant because he claimed an interest in the land by conveyance from the life beneficiary, denied the invalidity of the prior judgments and filed a counterclaim, seeking to quiet title in himself. Plaintiffs, by their reply, sought to cancel the conveyances by which Spence claimed his title, and to quiet title in themselves, subject to the outstanding life estate. The trial court's decree annulled the prior judgments insofar as they affected the plaintiffs, cancelled the conveyances to Spence insofar as they affected plaintiffs' interests, and quieted title in plaintiffs, subject to the life estate of the beneficiary previously conveyed to Spence. Spence appealed from such judgment. Pending this appeal, Doctor Spence died. His successors, George D. Spence, Everett Braden and Mittie V. Spence, were substituted as parties appellant.

The 1930 Pemiscot County Circuit Court judgments here involved are the subject of a prior opinion of this court in Hughes v. Neely, Mo.Sup., 332 S.W.2d 1, decided January 11, 1960. The prior opinion affirmed a judgment of the Pemiscot County Circuit Court in an action brought by plaintiffs in the present case, annulling the 1930 judgments insofar as they affected the interests of plaintiffs in two tracts not here involved. Although his original answer in this case sought to sustain his claim on the basis of the 1930 judgments, defendant Spence subsequently amended his answer, basing his claim upon transactions to be more fully discussed below.

■ At the outset, we are confronted by a jurisdictional question raised by appellants. Although Doctor Spence invoked the jurisdiction of the Pemiscot County Circuit Court below, appellants now suggest that the action there was one affecting title to real estate within § 508.030, RSMo 1959, V.A.M.S., and that, since the real estate involved is situated in Dunklin County, the Pemiscot County Circuit Court lacked jurisdiction. Our jurisdiction of the appeal is clear, since the decree appealed from did determine title to real estate. Howell v. Reynolds, Mo.Sup., 249 S.W.2d 381, 383 [1–3]. However, we would, as appellants suggest, examine the jurisdiction of the court below to enter such judgment, even though the matter had been raised by the parties neither in that court nor here. Howell v. Reynolds, supra; March v. Gerstenschlager, Mo.Sup., 322 S.W.2d 743, 744 [1].

■ The 1930 actions had originated in Dunklin County and were taken to the Pemiscot County Circuit Court on a change of venue. Plaintiffs' petition in the present

action sought only the cancellation of the 1930 judgments. Therefore, the action was properly brought in Pemiscot County. § 526.090, RSMo 1959, V.A.M.S. Such venue was proper, although the judgment sought would have incidentally affected title to real estate situated in another county. Capitain v. Mississippi Valley Trust Co., 240 Mo. 484, 144 S.W. 466, 468 [1]; Capitain v. Mississippi Valley Trust Co., Mo. Sup., 177 S.W. 628, 632 [1].

By his counterclaim, defendant Spence asserted title to one forty-acre tract under a trustee's deed upon foreclosure of a mortgage authorized by the trust instrument. Although he did not expressly so state in his counterclaim, he also claimed title to the other forty-acre tract even though the 1930 Pemiscot County Court judgments were void and he sought to quiet title in himself as to both tracts. Plaintiffs joined issue on the asserted title of Spence, asserting the invalidity, unther the trust instrument, of the mortgage through which Spence claimed title to the one tract and of the deed which he relied upon with respect to the other. Plaintiffs sought an affirmative declaration of their title as against Doctor Spence. As above stated, the court did quiet the title in favor of plaintiffs as against Spence, in addition to cancelling the 1930 judgments, in accordance with plaintiffs' original petition.

■ In view of our prior construction of § 508.030 as jurisdictional and nonwaivable, we cannot avoid appellants here questioning the jurisdiction of the Pemiscot County Circuit Court to determine the quiet title issues which Doctor Spence injected into the action in the circuit court. The suggestion in Rice v. Griffith, 349 Mo. 373, 161 S.W.2d 220, that the limitation of § 508.030 might be waived was repudiated in Howell v. Reynolds, Mo.Sup., 249 S.W.2d 381, 384, and March v. Gerstenschlager, 322 S.W.2d 743, 744. How-

ever, the court, in Howell v. Reynolds, did characterize § 508.030 as a "venue" statute. It is such in the sense that upon the proper invocation of its power, the circuit court of one county may affect title to realty in another. Thus, a change of venue to another county is permissible in such actions. Henderson v. Henderson, 55 Mo. 534; Blanchard v. Dorman, 236 Mo. 416, 139 S.W. 395.

In Hewitt v. Price, 204 Mo. 31, 102 S.W. 647, plaintiff foreclosed a deed of trust on land in Newton County and purchased the property. He sued in the Jasper County Circuit Court for the deficiency between the sale price and the balance due on the indebtedness. A change of venue was taken to Barton County, where defendant filed a counterclaim attacking the validity of the trustee's sale and seeking to set it aside on the grounds of fraud. On the appeal from an adverse judgment, plaintiff questioned the jurisdiction of the trial court to determine the matters raised by defendant's counterclaim, contending that it sought the affirmative relief by which the title to real estate would be affected. The court upheld the authority of the Barton County Circuit Court to grant the relief requested by defendant in the counterclaim. The court referred to the counterclaim statute in effect at that time (§§ 604 and 605, RSMo 1899) and stated: "Our Code has made very liberal provisions respecting the settlement of controversies between litigants, and has made ample provision, where suits are brought, for the defendants by way of cross bill or counterclaim, to assert every right to which they may be entitled connected with the subject-matter of the cause of action alleged in the petition." 102 S.W. 649–650.

■ In Howell v. Reynolds, 249 S.W.2d 381, in holding that, under § 508.030, the Circuit Court for the City of St. Louis lacked the authority under plaintiff's petition seeking such relief to cancel a deed

of trust on land in St. Louis County, the court stated (249 S.W.2d 384):

"We deem it necessary to state, however, that we do not hold that after an action, either transitory or local, is properly instituted in any county that the court may not thereafter acquire jurisdiction of title to real estate situate in another county if it becomes necessary under the issues thereafter arising so to do in order to determine and adjudicate the rights of all parties to the suit. Section 509.060 of the Civil Code clearly indicates that once jurisdiction of a controversy and the parties thereto has attached the court has jurisdiction to determine all properly pleaded phases thereof. See also Rice v. Griffith, 349 Mo. 373, 161 S.W.2d 220, and Robinson v. Field, 342 Mo. 778, 117 S.W.2d 308. Section 508.030, although mandatory as to the place of bringing an action affecting title to real estate, is, nevertheless, solely a venue statute. Henderson v. Shell Oil Co., 8 Cir., 173 F.2d 840. It does not restrict the trial and adjudication of defensive issues involving title to real estate to the county in which the real estate is situated. Neither does it restrict the general jurisdiction invested in circuit courts under the provisions of Article V, § 14, of the Constitution [V.A.M.S.]. Rice v. Griffith, supra."

█ █ These cases, in our opinion, support the conclusion that our counterclaim statute (§ 509.420, RSMo1949) and the superseding rule (Civil Rule 55.45, V.A.M.R.) have, in effect, carved out an exception to the requirement of § 508.030. The result in Rice v. Griffith, supra, is consistent with such conclusion. On such basis, we conclude that, the action here involved having been properly brought in the Pemiscot County Circuit Court, its authority to make a full determination of the relevant issues presented by the counterclaim filed in the original action is not precluded by § 508.030.

Turning to the merits, plaintiffs in this case, William Blair Hughes and Mary Elizabeth Mosby, are the son and daughter of the defendant Margaret E. Hughes.

Margaret E. Hughes is the daughter of James M. Douglass. In October, 1919, Douglass conveyed the two forty-acre tracts here involved as part of a 260-acre tract to his son, T. G. Douglass, as trustee for Margaret E. Hughes, the grantor reserving to himself a life estate. The conveyance to the trustee was "For the sole use and benefit of the said Margaret E. Hughes during her natural life and at her death to go direct to the heirs of her body." James M. Douglass died in 1921, and by his will devised other lands, not here involved, to T. G. Douglass as trustee for Margaret during her life.

T. G. Douglass took over the property and managed it for five or six years as trustee. He then declined to act as trustee and J. Mott Douglass, named in the deed as successor trustee, also refused to act. On May 3, 1926, the Dunklin County Circuit Court, on ex parte application of Margaret, appointed her husband, J. B. Hughes, successor trustee. On January 15, 1929, the Dunklin County Circuit Court reaffirmed its appointment of J. B. Hughes as successor trustee and on January 21, 1929, the Dunklin County Probate Court also appointed Hughes successor trustee.

On April 1, 1929, J. B. Hughes as trustee and Margaret and J. B. Hughes executed a deed of trust on one of the forty-acre tracts here involved to Charles O. Bray, trustee for the Bank of Senath, to secure a note for $1,222.00. The forty-acre tract was described as the Southeast Quarter of the Northwest Quarter of Section 31, Township 18 North, Range 9 East, in Dunklin. We will refer to this tract as the "North Forty."

On May 29, 1930, Margaret and J. B. Hughes filed suits in the Dunklin County Circuit Court, in which, on change of venue, the Pemiscot County Circuit Court, on July 31, 1930, entered its judgments, cancelling the trust conveyance of October, 1919, and decreeing that Margaret E. Hughes was the owner in fee simple of the lands therein described.

On December 24, 1930, J. B. and Margaret E. Hughes executed a deed of trust on the second forty-acre tract here involved to Henry M. McKay for the benefit of John T. McKay, John T. McKay, Jr., James H. Bradley, James H. Bradley, Jr., and Theo Robb. This deed of trust was given to secure three notes of Margaret and J. B. Hughes, totalling $1,294.35. The second forty-acre tract is described as the Northeast Quarter of the Southwest Quarter of Section 31, Township 18 North, Range 9 East, and will be referred to as the "South Forty." On October 26, 1933, the Dunklin County Circuit Court rendered judgment in the amount of $777.98 against Margaret E. Hughes and J. B. Hughes on one of the notes secured by the deed of trust on the South Forty.

On April 20, 1934, Charles O. Bray as trustee of the deed of trust on the North Forty conveyed that tract to E. L. Spence after a foreclosure sale.

On September 8, 1934, three conveyances were executed. One by Margaret and J. B. Hughes was a quitclaim deed to E. L. Spence on the North Forty. The second was a quitclaim deed to E. L. Spence by the beneficiaries of the deed of trust on the South Forty. The deed recited that it was in release of the judgment in favor of the grantors against the Hugheses and in release of the deed of trust executed by the Hugheses. The third conveyance was a general warranty deed covering the South Forty from the Hugheses to E. L. Spence. Spence had been in possession of each forty-acre tract from the date of the conveyance to him of each and until the filing of this action on October 3, 1959.

William Blair Hughes and Mary Elizabeth Mosby, as contingent remaindermen under the 1919 trust conveyance, sought by their petition to set aside the 1930 Pemiscot County judgments insofar as they terminated their interests. William Blair, aged fifteen at that time, was a party defendant to the Pemiscot County proceedings, being represented by a guardian ad litem. Mary Elizabeth Mosby was born the year following the 1930 judgment. Margaret E. Hughes, their mother, was still living at the time of the filing of this action and the judgment herein.

Inasmuch as appellants do not attack that portion of the judgment in this case which set aside the 1930 Pemiscot County judgments, we need not detail the issues on that matter. Substantially they were the same as those presented in Hughes v. Neely, supra.

The issues presented on this appeal relate solely to the validity of the deed of trust and the trustee's deed for the North Forty and the deed of trust and subsequent conveyances affecting the South Forty. Without express findings, the trial court set aside the trustee's foreclosure deed to the North Forty on the basis of plaintiffs' assertions that:

1. J. B. Hughes's appointment as successor trustee was void.

2. The appointment of J. B. Hughes as successor trustee did not transfer the title from T. G. Douglass as trustee to Hughes as successor trustee.

3. The power to mortgage given T. G. Douglass in the trust deed was a personal power, exercisable only by him, and not by Hughes as successor trustee.

4. The deed of trust was not given to secure a loan "for the proper care and support" of Margaret, the only authority conferred by the trust.

5. The deed of trust was not supported by the written consent of Margaret, witnessed by two or more witnesses, as required by the trust instrument.

6. The foreclosure sale and subsequent conveyance were void because of collusion between Spence and the trustee under the deed of trust.

The 1919 trust conveyance provided, with respect to the land here involved:

"To have and to hold said lands above described with all the privileges and appurtenances to the same belonging or in anywise there appertaining unto him, the said T. G. Douglass, his executors, administrators and successors in trust and confidence, however, for the uses and purposes as hereinafter set out and for none other, to-wit:

"For the sole use and benefit of the said Margaret E. Hughes during her natural life and at her death to go direct to the heirs of her body, and in the event that the said Margaret E. Hughes should die leaving no children, heirs of her body, then the lands herein conveyed shall descend and go direct to the heirs and legal representatives of the said James M. Douglass, the donor herein, and should the said trustee herein named die before the said Margaret E. Hughes, his ward, or in any wise fail or refuse to act, then J. Mott Douglass of Kennett, Dunklin County, Missouri, shall take full charge of the trust herein and execute the same upon the same conditions and with the same restrictions as the same T. G. Douglass and in case the said J. Mott Douglass should die or fail or in anywise refuse to act, then such person as the Probate Court of Dunklin County, Missouri, shall appoint, shall take full charge of the trust herein conveyed and execute the same in strict accordance with its terms and conditions as herein stated during the lifetime of the said Margaret E. Hughes. The said T. G. Douglass to have active charge and control of the lands conveyed during the lifetime of the said Margaret E. Hughes and to receive the rent and profits and any issues arising from or growing out of and from said lands, and, after the payment of the regular annual taxes and repairs and necessary expenses for the proper upkeep and care of the said lands herein conveyed each year, and after deducting a reasonable compensation for his services as such trustee not to exceed 8% of the net income of the year, the said T. G. Douglass shall turn over and pay to the said Margaret E. Hughes the net annual income from the lands herein conveyed for her sole use and benefit from year to year during her natural life and in the event it should become necessary, in the judgment of the said T. G. Douglass to mortgage any part or all of the lands herein conveyed for the use and benefit of the said Margaret E. Hughes during her lifetime, the said T. G. Douglass is hereby authorized and by and with the written consent of the said Margaret E. Hughes and witnessed by two or more competent witnesses to mortgage such part of the real estate herein conveyed and to such amount as he shall deem necessary for the proper care and support of the said Margaret E. Hughes at the time."

The allegation that the appointment of J. B. Hughes as successor trustee was void is based upon the contention that the appointment was not only as successor trustee under the inter vivos trust, but was also as successor trustee under the James M. Douglass testamentary trust. According to respondents, the circuit court could, as it did, appoint a successor trustee under the inter vivos trust ex parte, but the appointment under the testamentary trust required notice to all interested parties. Such notice not having been given, respondents assert that the entire proceedings were void.

We are here dealing only with the inter vivos trust. In view of the concession that a successor trustee may be appointed ex parte for such trust, we need not consider what might have been required for the testamentary trust. As to each of the trusts, the order of appointment of the successor trustee is clearly separable, and the appointment of the successor trustee under the inter vivos trust may stand. State ex rel. Wyandotte Lodge No. 35, I. O. O .F. v. Evans, 176 Mo. 310, 75 S.W. 914, 918; Edmondson v. Edmondson, Mo.App., 242 S.W.2d 730, 736 [9]; 49 C.J.S. Judgments § 450, p. 881; 30A Am.Jur., Judgments, § 20, p. 173. Henrioid v. Neusbaumer, 69 Mo. 96, cited by respondents, does not involve the question of partial invalidity of judgments.

■ The attack on the appointment of the successor trustee on the grounds that the court's order recited that the children of Margaret Hughes had *vested* interests does not affect the validity of the appointment. The title was not an issue in the appointment proceedings. The action taken was not dependent upon the erroneous recital. See Gibson v. Sharp, 364 Mo. 1007, 270 S.W.2d 721, 723; State ex rel. Riggs v. Seehorn, 344 Mo. 186, 125 S.W.2d 851.

■ The trust deed conveyed the property to T. G. Douglass, "and unto his executors, administrators, and *successors,* in trust * * *." The order appointing Hughes successor trustee was sufficient to vest title to the trust property in him, although the order made no express provision to such effect. No conveyance from the prior trustee to his successor was required. Boone v. Wachovia Bank & Trust Co., 82 U.S.App.D.C. 317, 163 F.2d 809, 173 A.L.R. 1285, 1293 [14]; Bogert on Trusts, 2d ed., § 532, p. 423; Restatement of Trusts (2d), § 109, p. 240. Bogert (op. cited) does, as respondents state, cite Coffman v. Gates, 110 Mo.App. 475, 85 S.W. 657, as an exception to the general rule in its holding that the appointment of a successor trustee did not divest the title of the predecessor. However, the factual situation in the Coffman case was far from that here involved. Trustees of a testamentary trust had been removed in Coffman. One of the testamentary trustees was also the holder of the legal title to a tract of land, one third in his own right and the remaining two thirds in accordance with the testamentary trust, and subject to the right of sale in the testamentary trustees. Insofar as that tract was concerned, the court held that the removal of the testamentary trustees and substitution of another did not have the effect of divesting the title of the record holder, the new testamentary trustee merely being substituted for the prior trustees insofar as the power of sale was concerned. In addition, the entire issue appears to have been relevant only to the question of whether or not an appeal from a decree in partition of the tract should abate upon the death of the substituted testamentary trustee. We do not consider the holding in the Coffman case determinative of the question here presented and follow the general rule above stated.

On the question of whether or not the power to mortgage the trust property was a personal power, to be exercised only by the original trustee and not by his successor, respondents point out that the trust deed specifically authorized T. G. Douglass to exercise such power, that T. G. Douglass was the brother of the beneficiary, that the power is an extraordinary one, and that these factors, along with the purpose for which the power could be exercised, showed "that the settlor of the trust reposed personal and special confidence in his son, T. G. Douglass, in connection with taking care of Margaret E. Hughes, to the exclusion of possible successors."

■ The trust deed authorized the successor trustee to "execute the [trust] in strict accordance with the terms and conditions as herein stated * * *." Even if this language should be insufficient to authorize the successor trustee to exercise the power to mortgage given the original trustee, the successor would be deemed to have such power, unless the settlor manifested an intention that the power be exercised only by the original trustee (1 Restatement, Trusts, 2d, § 196, p. 431). According to the Restatement:

"In determining the intention of the settlor whether a power conferred by the terms of the trust should be exercised only by the trustee originally named, the following circumstances may be relevant: (1) the nature and extent of the power; (2) the time at which the power may be exercised; (3) the amount of discretion involved in the exercise of the power; (4) the purposes of the trust; (5) whether the original trustee is an individual or a corporation; (6) whether the power is conferred upon the trustee by name; (7) the relationship of the original trustee to the settlor or

the beneficiaries; (8) the relationship between settlor and beneficiaries.

"The trend of the decisions has been toward holding with increasing liberality that powers can be exercised by successor trustees, except where it appears by the terms of the trust that they should be exercised only by the trustees originally named."

In this case, the power to mortgage was to be exercised for the benefit of the cestui whenever it should become necessary to provide funds for her proper care and support. The trust instrument clearly contemplated the necessity for successor trustees during the period of the trust, or Margaret's lifetime. The settlor obviously desired that the purpose of the trust be accomplished throughout Margaret's lifetime, and we perceive no intention that the exercise of the power to mortgage was to be limited to the trustee originally named.

In Williams v. Hund, 302 Mo. 451, 258 S.W. 703, cited by respondents, the power involved was clearly a personal power and the case actually involved the exercise of the power by the originally named trustee. Hazel v. Hagan, 47 Mo. 277, cited by respondents, did not involve the power of a successor trustee.

J. B. Hughes testified that the purpose of the loan from the Bank of Senath was to obtain funds to purchase "mules and farm equipment to farm the land or to furnish the sharecroppers with it." Respondents' position is that a loan for such purpose was beyond the authority of the trustee, who was authorized to mortgage the trust estate only to provide for Margaret's proper care and support. Respondents state that the trustee was not authorized to engage in farming operations and was limited "to receiving and collecting the rents arising from the lands." In our opinion, the power conferred upon the trustee was sufficient to authorize him to operate the farm directly or through sharecroppers. He was not limited to merely renting the land. He was to have "active charge and control of the lands * * *." The mode of the exercising of such authority was primarily for the trustee's determination. The evidence showed that, at the time of the loan from the Bank of Senath, Margaret and her husband and son lived on the income derived from farming this and other land. The farming operation provided the family's sole source of income. A loan to permit the operation of the farm which would provide income for Margaret was a loan for her proper care and support within the meaning of the trust deed.

The deed of trust was executed by J. B. Hughes as trustee for Margaret and by J. B. Hughes and Margaret individually. There was no evidence that Margaret had consented to the transaction in writing, attested by two or more competent witnesses, as the deed required. However, the object of the requirement was to assure the consent of Margaret to the mortgage transaction. Her execution of the deed of trust sufficiently evidenced her consent.

The final attack on the title to the North Forty is a charge that the purchase by Spence at the foreclosure of the deed of trust was the product of a collusive arrangement between Spence and the attorney for the trustee. The charge is that, by such arrangement, Spence was permitted a credit against his ostensible $1,150 bid at the foreclosure for tax judgments which Spence discharged, amounting to some $675.00. According to respondents, the agreement produced a sale at which a grossly inadequate consideration of $494.90 was actually paid for the land. The difficulty with this contention is that the evidence fails to show that the arrangement, if any, between Spence and the attorney for the trustee was in any respect aimed at chilling bidding. There is nothing to show that such arrangement was offered only to Spence and was not available to all potential bidders. The trustee had a right to cry the sale as free from encumbrances and to take bids on such basis. Field v. Brown, 207

Mo.App. 55, 229 S.W. 445, 447; Brown v. Bland, Mo.App., 229 S.W. 448, 451. Nor does the evidence support the conclusion that, if $494.90 was the actual sale price, it was so grossly inadequate as to call for rescission of the sale. The testimony as to the value of the land at the time of the sale ranged from $20 per acre to $200 per acre. The sale was in a depression period and the high value seems unlikely to have been accurate. In 1933, Doctor Spence purchased an eighty-acre farm with improvements in the vicinity of the North Forty for $2400.00. The North Forty had no improvements. In our opinion, the conclusion that the sale was for an inadequate consideration, induced by a collusive arrangement between the purchaser and the attorney for the trustee, could not stand.

As to the North Forty, we, therefore, conclude that Spence's title was based upon the foreclosure of a valid deed of trust executed by the trustee in accordance with the power conferred by the trust instrument. There is no contention that the foreclosure did not terminate the contingent remainder interests of the plaintiffs in this action. The trial court should have quieted title to the North Forty in Spence as against the plaintiffs' claims.

As for the South Forty, the situation is different. Appellants' position is that the quitclaim deeds from the cestuis under the deed of trust and the warranty deed from Margaret and J. B. Hughes were in lieu of the foreclosure and were as effective as a deed under foreclosure might have been. This position, of course, assumes the continued validity of the trust. Appellants do not attempt to argue that the indebtedness which the deed of trust secured was for the proper care and support of Margaret, as the trust required. Their position is that Doctor Spence was a bona fide purchaser for value in the transactions in lieu of the foreclosure. The evidence showed that the indebtedness which the deed of trust secured was the fee of the attorneys who rep-

resented Margaret and J. B. Hughes in the Pemiscot County Circuit Court. J. B. Hughes testifed that the one thousand dollars consideration recited in the warranty deed from the Hugheses to Spence for the South Forty was, instead, paid by Spence directly to the attorneys in satisfaction of the Hugheses' indebtedness to them. Having knowledge of the fact that the indebtedness was for attorneys' fees, as he must have had since he paid the money directly to the attorneys as creditors of the Hugheses, and being charged with knowledge of the limitation upon the borrowing power of the trustee under the trust, Spence's knowledge was such as would require a reasonably intelligent and diligent person to inquire whether the trustee had committed a breach of the trust, and such inquiry, if pursued with reasonable intelligence and diligence would have given him knowledge that there had been a breach of trust, 2 Restatement, Trusts, 2d, § 297, comment a, p. 74. Here, considering the transaction as one under the trust, Spence could with reasonable inquiry have determined that the indebtedness involved was one to procure the destruction of the trust, not "for the proper care and support" of the beneficiary under the trust. In such circumstances, his claim that he must be considered as if he were a bona fide purchaser for value in a transaction involving the trust property fails. Having reached this conclusion, we do not consider the other theories advanced by respondents for invalidating Spence's claim to the South Forty. The trial court correctly quieted title to plaintiffs in that tract.

The judgment of the trial court, insofar as it cancels and annuls, as to plaintiffs in this action, the 1930 judgment of the Pemiscot County Court is affirmed. Insofar as it quiets title in plaintiffs and against appellants in the Northeast Quarter of the Southwest Quarter of Section 31, Township 18 North, Range 9 East, containing forty acres, more or less, the judgment is likewise affirmed. Insofar as the judgment affects the Southeast Quarter of the North-

west Quarter of Section 31, Township 18 North, Range 9 East, containing forty acres, more or less, the judgment is reversed and the cause remanded with direction to quiet title to said tract in appellants in accordance with the prayer of their counterclaim.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.